**In re Ralph Keith HOLST, Debtor.**

**Bankruptcy No. 95–41476XM.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 31, 1996.

---

David M. Nelsen, Mason City, Iowa, for Debtor.

David J. Siegrist, Britt, Iowa, for Manufacturers Bank & Trust Co.

Habbo G. Fokkena, Trustee, Clarksville, Iowa.

### DECISION RE: OBJECTION TO CLAIM OF EXEMPTION IN 401(k) PLAN

WILLIAM L. EDMONDS, Chief Judge.

Manufacturers Bank & Trust Co., Forest City (BANK) objects to debtor's claim of exemption in a 401(k) plan with his employer. Trial was held on January 9, 1996 in Fort Dodge. David J. Siegrist, Esq. appeared for Bank; David M. Nelsen, Esq. appeared for debtor.

This contested matter presents two issues: (1) whether debtor's beneficial interest in a 401(k) retirement plan is excluded from his bankruptcy estate if at filing he had an absolute right to demand payment of his accrued benefit; and (2) if the benefit is property of the estate, is it exempt under Iowa law. I conclude that debtor's beneficial interest is excluded from the estate under 11 U.S.C. § 541(c)(2). I do not decide the exemption issue.

Ralph Keith Holst filed his chapter 7 petition on August 9, 1995. In his schedule of personal property, he listed an interest in a 401(k) plan with his employer, Winnebago Industries, Inc. (WINNEBAGO). He scheduled the interest as having a value of $48,418. He claimed the interest as exempt to the extent of $47,929.67 under Chapter 627 of the Iowa Code. Bank objected to his claim (docket no. 14). Thereafter, Mr. Holst amended his schedules to explain that he scheduled the interest for "informational purposes" and that his interest was not property of the estate (docket no. 20). His amendment stated that the claim of exemption was also "only for informational purposes." *Id.*

The parties agree that although the pleadings focus on the legitimacy of the claim of exemption under Iowa law, the court at the outset must decide if Holst's interest in the plan is property of the estate. Holst contends it is excluded under 11 U.S.C. § 541(c)(2) as it is part of a trust which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and which contains an enforceable restriction on transfer. Bank argues that although debtor's interest is part of an ERISA plan, it is nonetheless property of the estate because at filing, the restriction on transfer was unenforceable since debtor had unqualified access to his interest.

### Findings of Fact

Ralph Keith Holst, an auto mechanic, was first employed by Winnebago on March 1, 1971. He retired in September 1994 at the age of 62. Since 1972, he had participated in a profit sharing plan with his employer. The current plan is entitled the "Winnebago Industries, Inc. Profit Sharing and Deferred Savings and Investment Plan." Its terms

are contained in an Adoption Agreement (Exhibit 6) and in the Twentieth Century Defined Contribution Prototype Plan and Trust Agreement # 3 administered by Twentieth Century Services, Inc. (PROTOTYPE) (Exhibit 5) (referred to in combination as THE PLAN).

The Plan provided for five types of contributions on behalf of covered employees. One, it permitted employee (or participant) after-tax contributions up until June 1, 1994 (Exhibit 6, Adoption Agreement § 4.01(a), (b) and (d); Exhibit 5, Prototype, § 4.01). Holst made no such contributions. Two, it permitted, but did not require, pre-tax salary deferral contributions by the employer at the election of the employee. This was the 401(k) component of the Plan (Adoption Agreement § 3.01, Part I(a); Prototype Articles III and XIV). Three, it provided for Winnebago contributions to match the employee's elected salary deferrals. Such contributions were discretionary both as to occurrence and amount, and if made, would apply only to the first six per cent of salary deferred by the employee (Adoption Agreement § 3.01, Part I(b)). Four, a Plan participant could, with the consent of Winnebago, rollover the proceeds of another tax-qualified plan into the Winnebago Plan (Prototype § 4.03). Five, Winnebago could, in its discretion, make contributions through the profit sharing component of the Plan (Adoption Agreement § 3.01, Part I(c)).

When Holst retired in September 1994, he was 62 years old, the "Normal Retirement Age under the Plan" (Adoption Agreement, § 5.01(a)). His rights under the Plan were fully vested. His accrued benefit comprised three funds which were accounted for separately.

| | |
|---|---|
| Employer pre-tax (elected salary deferral) | $18,755.31 |
| Employer match of elected deferrals | 9,192.06 |
| Employer profit sharing | 44,137.44 |
| Total | $72,084.81 |

(Exhibit 1).

To reach the profit sharing portion, Holst had to reach normal retirement age and retire. However, the other two funds became

available to Holst while employed after he reached age 59½. Holst elected to take a lump sum distribution on his separation from employment (Exhibit 2). He directed that

his payment be sent to Liberty Bank & Trust for deposit in an Individual Retirement Account (Exhibit 2).

Holst was re-employed by Winnebago sometime on or before May 17, 1995. On that date, he filed an application with Winnebago to make a rollover contribution to the Plan (Exhibit 3). Winnebago consented and received $47,929.67 from Liberty Bank & Trust for investment on Holst's behalf (Exhibit 3). This amount was all that remained in the IRA from Holst's deposit after retirement.

When Holst filed his chapter 7 petition, he was still employed by Winnebago, although since filing, he has left its employ. At the time of filing, his most recent Participant Valuation Summary under the Plan showed that his accrued benefit was $48,418.55 (Exhibit 1). Of that amount, nearly all was from his rollover contribution and from earnings thereon. Perhaps only $151.87 came from salary deferrals and matching contributions after his rehire.

Under the terms of the Plan, all or any part of Holst's accrued benefit attributable to his rollover contribution was accessible to him at any time (Prototype, § 4.05). He could make withdrawals of his contributions once per year.

The Plan contains a restriction on assignment or alienation. It states:

Subject to [the Internal Revenue] Code [of 1986, as amended] § 414(p) relating to qualified domestic relations orders, neither a Participant nor a Beneficiary may anticipate, assign or alienate (either at law or in equity) any benefit provided under the Plan, and the Trustee will not recognize any such anticipation, assignment, or alienation. Furthermore, a benefit under the Plan is not subject to attachment, garnishment, levy, execution or other legal or equitable process.

(Exhibit 6, Prototype § 8.05, with reference to § 1.25).

### Discussion and Conclusions

Bank contends that for a debtor's beneficial interest in a pension or profit sharing plan to be excluded from his or her bankruptcy estate (1) the plan must be a trust subject to ERISA, (2) it must contain a restriction on the transfer of the debtor's interest, and (3) the restriction must be enforceable under applicable nonbankruptcy law, which Bank argues means it must be a restriction enforceable under state law governing spendthrift trusts and ERISA.

■ Bank concedes that the Winnebago Plan is a trust subject to ERISA and that it contains an anti-alienation provision as required by § 206(d)(1) of that statute. 29 U.S.C. § 1056(d)(1). Bank agrees also that the Plan qualifies for favorable tax treatment under the Internal Revenue Code. 26 U.S.C. §§ 401(a) and 401(k). One of the requirements for tax qualification is that a plan include an anti-alienation provision. 26 U.S.C. § 401(a)(13). It is not disputed that a plan's anti-alienation requirement precludes voluntary and involuntary transfers. *General Motors Corp. v. Buha,* 623 F.2d 455, 460 (6th Cir.1980); *Vink v. SHV North America Holding Corp.,* 549 F.Supp. 268, 270 (S.D.N.Y.1982); *see also* 26 C.F.R. § 1.401(a)–13(b)(1) (1995) (tax qualification requires provision that benefits may not be anticipated, assigned, alienated or subject to attachment, garnishment, levy, execution or other process).

Nevertheless, Bank contends that Holst's beneficial interest is not protected by the ERISA–mandated Plan restriction on transfer because Holst has the right to immediate payment of his benefit. Because of such access, Bank says that Holst's Plan benefit is protected neither by a restriction enforceable under ERISA nor by a restriction enforceable under state spendthrift trust law, and to exclude the benefit from the estate, both types of restrictions must protect Holst's benefit.

This argument is more readily understood when one considers the precedent in this district regarding the treatment of pension and profit sharing plans. In 1982, this court ruled that a debtor's interest in an ERISA pension and profit sharing plan was property of the estate. *Samore v. Graham (In re Graham),* 24 B.R. 305, 310–11 (Bankr. N.D.Iowa 1982). The court concluded that ERISA was not "applicable nonbankruptcy

law" within the meaning of 11 U.S.C. § 541(c)(2). The court also considered whether the plan was a traditional spendthrift trust that might, therefore, be excluded from the estate. *Id.* at 310. It concluded that it was not. *Id.* at 311. The court held also that the debtor's interest was not exempt. The debtor appealed to the Eighth Circuit Court of Appeals arguing that "applicable nonbankruptcy law" under § 541(c)(2) included ERISA and that, therefore, his interest in the plan was excluded from the estate. In the alternative, he again argued that the plan was exempt.

The Circuit Court affirmed the bankruptcy court's determination that ERISA was not applicable nonbankruptcy law under § 541(c)(2). *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984). Although the court also discussed the pre-Code bankruptcy treatment of traditional spendthrift trusts and the preservation of that treatment under the Code, it came to the conclusion that pension and profit sharing plans could not be excluded from the estate under § 541(c)(2) as "traditional spendthrift trusts." *Id.* at 1272. Pension benefits, including ERISA benefits, were "intended and assumed to be part of the estate," and were to be dealt with as a matter of exemption law. *Id.* "A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start, they may then be exempted out." *Id.* at 1272–73.

Subsequently, ERISA plans were held to be property of the estate even though they might otherwise qualify as spendthrift trusts under state law. *Samore v. Independent Pension Services, Inc. (In re McKenna)*, 58 B.R. 221, 223 (Bankr.N.D.Iowa 1985).

In June 1992, the Supreme Court decided in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), that "applicable nonbankruptcy law" under § 541(c)(2) included ERISA. Its decision excluded from a debtor's estate a pension plan which was subject to ERISA, which had qualified for favorable tax treatment under the Internal Revenue Code, and which included an anti-alienation provision enforceable under ERISA.

Bank contends that the effect of *Patterson v. Shumate* is to permit the exclusion of ERISA plans under § 541(c)(2) only if they also meet the requirements of a traditional spendthrift trust under state law. Bank reasons that the *Patterson* decision now permits consideration of whether ERISA trusts are excluded as spendthrift trusts. If Bank is correct in its interpretation of *Patterson*, Holst's beneficial interest would not be excluded from the estate. The Winnebago Plan fails as a spendthrift trust under Iowa law. First, it is self-settled, as Holst contributed nearly all of his accrued benefit through his rollover contribution. In Iowa, a spendthrift trust may not be established by the beneficiary. *Hanson v. Minette*, 461 N.W.2d 592, 595 (Iowa 1990); *see also Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121, 1124 (8th Cir.1989) (same under Minnesota law). It might also be concluded that the beneficiary's immediate right to obtain his benefit from the trustee is a power to revoke the trust and defeats status as a spendthrift trust. *Merchants' National Bank v. Crist*, 140 Iowa 308, 118 N.W. 394, 395 (1908); *Humphrey v. Buckley*, 873 F.2d at 1123; *In re Schwartz*, 58 B.R. 606, 607 (Bankr.N.D.Iowa 1984); *but cf. Darling v. Dodge*, 200 Iowa 1303, 206 N.W. 266, 267–68 (1925) (creditor could not garnish income from trust in hands of trustee although under terms of trust, the beneficiary could elect to be paid). Because Holst's Plan does not qualify as a spendthrift trust under state law, its restriction on alienation is ineffective under state law.

Bank cites *In re Caslavka*, 179 B.R. 141 (Bankr.N.D.Iowa 1995) in support of its contention that a plan subject to ERISA must also qualify as a traditional spendthrift trust to be excluded from the estate. In that decision, the court stated that "[o]nce a debtor gains unrestricted access to funds in an ERISA-qualified plan, such funds do not qualify as a spendthrift trust under § 541(c)(2) and thus are not excludable from the estate." *Id.*, 179 B.R. at 143.

Bank reads *Caslavka* overbroadly. The facts of the case are straightforward. Mr. Caslavka had retired and sold his business. He chose to rollover the funds in his former

employer's profit sharing plan into three IRA annuities established under 26 U.S.C. § 408(b). Upon filing bankruptcy, Caslavka argued that the IRA annuities were not property of the estate or were exempt under Iowa law. The court noted that it was probable the profit sharing plan would have been excludable under § 541(c)(2). But debtor had taken his benefit from the plan and had invested it in IRAs which contained no enforceable restrictions under nonbankruptcy law. *Id.* at 143. Judge Kilburg ruled that the annuities were property of the estate.

On the issue of whether the annuities were property of the estate, Judge Kilburg reached two conclusions. First, because the debtor had unrestricted access to the money in the annuities, the annuity plans were not spendthrift trusts under state law. He pointed out that "IRAs have no enforceable restrictions under any nonbankruptcy law." *Id.*

Second, because the debtor had "gained unrestricted access to the Profit Sharing Plan funds, they lost their status as ERISA-qualified such that § 541(c)(2) no longer applies." *Id.* This is no more than a determination that the IRA annuities were not subject to ERISA's anti-alienation requirements. *Patterson v. Shumate,* 504 U.S. at 762–63, 112 S.Ct. at 2249.

▇▇▇▇ Judge Kilburg considered whether Caslavka's IRA annuities were excluded from property of his bankruptcy estate under either state spendthrift trust law or under applicable federal nonbankruptcy law— ERISA. But I do not read his decision as requiring a trust to be excluded under both state law and ERISA. Nor do I interpret *Patterson v. Shumate* to impose such a requirement. *Patterson* excluded a debtor's ERISA plan benefits from the bankruptcy estate without reference to whether the pension plan qualified as a spendthrift trust under state law. *Arkison v. UPS Thrift Plan (In re Rueter),* 11 F.3d 850, 853 (9th Cir. 1993); *Gilbert v. Foy (In re Foy),* 164 B.R. 595, 599 (Bankr.S.D.Ohio 1994).

Holst's beneficial interest in the trust may be excluded from the estate, although it is not an interest in a spendthrift trust under state law. Holst need only show that the

trust is subject to ERISA and that the Plan's restriction on the transfer of his interest is enforceable under ERISA. Bank argues that *Caslavka* supports inclusion in this case because Holst had unqualified access to his accrued 401(k) benefit so that there was no enforceable restriction on transfer. It is correct that on the date of bankruptcy, Holst, without termination of employment, could have demanded and obtained his benefit from the plan trustee. Bank equates the right to obtain the funds with the obtaining of the funds. I do not agree that these are equivalent concepts. In *Caslavka,* the debtor had obtained his benefit from the ERISA trust and had deposited it in IRA annuities which were not part of the trust. In Judge Kilburg's words, he had "gained access." *Caslavka,* 179 B.R. at 143. The money was no longer part of the ERISA pension plan.

Holst, on the other hand, had the right to take the money from the plan, but he had not taken it. The legal issue is not whether he had the right to demand and obtain the funds as a beneficiary, but whether until he had obtained them, ERISA's restriction on transfer continued to apply. This issue has been previously considered. Federal courts have held that ERISA's anti-alienation provision does not protect funds that have been distributed to the beneficiary. *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville,* 16 F.3d 52, 55 (3d Cir.1994) (funds paid by ERISA trust and deposited in beneficiary's bank account not protected by ERISA's anti-alienation provision); *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9,* 10 F.3d 700, 710 (10th Cir.1993), *aff'd in part by Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078 (10th Cir.1994) (en banc; reversed on preemption issue), *cert. denied,* ─── U.S. ───, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995) (ERISA does not protect funds once benefits are paid and received); *Velis v. Kardanis,* 949 F.2d 78, 82 (3d Cir.1991) (Keogh plan proceeds distributed to beneficiary no longer protected by ERISA); *Tenneco, Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688, 691 (4th Cir.1983) (employee's pre-retirement withdrawal from ERISA plan could be garnished); *NCNB Financial Services, Inc. v.*

*Shumate,* 829 F.Supp. 178, 180 (W.D.Va. 1993), *aff'd by Nationsbank of North Carolina, N.A. v. Shumate,* 45 F.3d 427 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2616, 132 L.Ed.2d 859 (1995) (ERISA did not protect funds in bank account even though traceable to ERISA-qualified pension plan); *In re Toone,* 140 B.R. 605, 607 (Bankr. D.Mass.1992) (plan funds no longer protected by ERISA once plan administrator issued cashier's checks).

Beneficial interests have been protected where distribution has not taken place even if there is a present right to distribution. *Tenneco, Inc. v. First Virginia Bank,* 698 F.2d at 690; *see also Whetzal v. Alderson,* 32 F.3d 1302, 1303–04 (8th Cir.1994) (restriction on transfer of beneficial interest in Civil Service Retirement System, a non-ERISA plan, was enforceable despite beneficiary's present right to lump sum distribution; therefore, interest was excluded from bankruptcy estate). In a bankruptcy context, a debtor's beneficial interest in an ERISA plan was excluded from the estate despite the debtor's ability to withdraw certain contributions. *Barkley v. Conner (In re Conner),* 165 B.R. 901, 903 (9th Cir. BAP 1994), *aff'd,* 73 F.3d 258 (9th Cir.1996) (citing *Arkison v. UPS Thrift Plan (In re Rueter),* 11 F.3d 850 (9th Cir.1993)).

So long as Holst's beneficial interest is part of the Winnebago Plan, it is protected by the Plan's restriction on transfer, despite Holst's right to demand distribution of his benefit. The only question remaining is whether the rollover contribution is a plan benefit so as to come within the protection of the Plan's restriction on transfer. The restriction applies to "any benefit under the Plan." (Exhibit 5, Prototype, § 8.05). A rollover contribution is a participant contribution under Article IV of the Plan (Prototype, § 4.03). The Plan trustee may invest the rollover contribution in a segregated investment account, but in its discretion, may invest it as part of the Trust Fund. It appears the trustee invested Holst's contribution as part of the trust fund (Exhibit 1). Investment may be directed by the beneficiary. However, in other respects, "the Trustee will hold, administer and distribute a rollover contribution in the same manner as any Employer contribution made to the Trust." (Prototype, § 4.03).

An employee's " '[a]ccrued benefit' means the amount standing in a Participant's Account(s) as of any date derived from both Employer contributions and Employee contributions, if any." (Prototype, § 1.15). An "[a]ccount" means "the separate account ... the Trustee maintains for a Participant under the Employer's Plan." (Prototype, § 1.14). As the rollover contribution is an employee contribution maintained by the trustee under the Plan, it is a benefit provided under the Plan. As such, it is protected by the Plan's restriction on assignment or alienation (Prototype, § 8.05). The restriction is enforceable under ERISA.

I conclude, therefore, that Holst's beneficial interest in the Winnebago Plan is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) despite Holst's right under the Plan to obtain distribution of the benefit. I decline to reach the exemption issues raised by the Bank. *See Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004, 1007 (9th Cir.1993) (bankruptcy court should decide exemption issue only if plan is property of the estate).

IT IS ORDERED, ADJUDGED AND DECREED that the beneficial interest of Ralph Keith Holst in the Winnebago Industries, Inc. Profit Sharing and Deferred Savings and Investment Plan is excluded from the bankruptcy estate of this case pursuant to 11 U.S.C. § 541(c)(2). Judgment shall enter accordingly.

SO ORDERED.