**In re Thomas L. MILLER, Debtor.**

**Bankruptcy No. 98–31160.**

United States Bankruptcy Court,
D. North Dakota.

Sept. 17, 1998.

Sandra K. Kuntz, Dickinson, ND, for Judith Miller.

William Walters, Williston, ND, for Thomas L. Miller.

Wayne Drewes, Fargo, ND, Trustee.

*MEMORANDUM OPINION AND ORDER*

WILLIAM A. HILL, Bankruptcy Judge.

This matter arises on the competing Motions of the debtor, Thomas L. Miller, and his former spouse, Judith D. Miller, concerning assets distributed pursuant to the parties' divorce, to wit, the debtor's Burlington Resources Pension and Retirement Savings Plans ("Plans"). In her Motion for Relief from Automatic Stay, filed on August 14, 1998, Mrs. Miller claims an ownership interest in the amount of $54,857.00 in the Plans, or a lien in the same amount thereupon, based upon a succession of state court rulings entered during the course of the Millers' divorce proceedings, and, further, seeks leave of this Court to proceed for distribution or collection of this sum from the Plans. Conversely, Mr. Miller, in his Motion to Avoid Judicial Lien, filed on August 17, 1998 and based upon 11 U.S.C. § 522(f), disputes his former wife's' ownership claims against the plan funds and, having listed the Plans as assets in these bankruptcy proceedings, seeks to avoid any judicial lien thereon created by the state court rulings. The parties' motions raise the following threshold question, which, if answered in the negative, will provide a terminus to this Court's inquiries into the instant matter: Do the Plans constitute property of the bankruptcy estate?

## I. Facts

The heart of this matter, and the impetus of the Motions currently before this Court—that is, the ownership dispute between the parties over the Plans' funds—can be traced, in its inception, to the parties' divorce proceedings. There, the dispute became, in part, the subject of four rulings entered by the presiding court in that matter, the North Dakota District Court for McKenzie County, the Honorable William W. McLees, Judge.

In the first of these rulings, a Memorandum and Order entered on January 8, 1998, the state court outlined its factual findings and legal conclusions, determining to effect between the Millers a substantially equivalent division of the property, and distribution of the debt, within their marital estate. In this connection, the state court made an assignment of, inter alia, the Plans' assets to

Mr. Miller, noting that "[w]ith th[is] property division . . . , [Mr. Miller] is leaving this marriage with this retirement account, and his pension plan, fully intact." The court then entered a Divorce Judgment on February 3, 1998, in accordance with the provisions of its January 8 Memorandum and Order.

In yet another Memorandum and Order, entered on June 1, 1998, Judge McLees, after finding that Mr. Miller had failed to meet the financial obligations to Mrs. Miller which were required of him pursuant to the Divorce Judgment, granted Mrs. Miller relief consisting of, inter alia, the following items:

2. The Court will execute [a] QUALIFIED DOMESTIC RELATIONS ORDER . . . , which will serve as reasonable security for satisfaction of the following obligations which [Mr. Miller] has under the divorce JUDGMENT in this case:

(a) $8,424.66—[Mrs. Miller's] attorney's fees;

(b) $1,518.61—interim payments made by [Mrs. Miller] on obligations assigned to [Mr. Miller];

(c) $9,000.00—a cash settlement which [Mrs. Miller] is due to receive from [Mr. Miller] on or before July 1, 1998;

(d) $10,934.06—Bank of North Dakota loan balance . . . as of January 15, 1998;

(e) $8,520.33—VISA Gold balance as of January 15, 1998.

. . . .

3. The total amount of obligations (a) through (c) above—$18,943.27—will, from and after July 1, 1998, constitute a money judgment in favor of [Mrs. Miller] and against [Mr. Miller], with interest to accrue at the legal rate. As stated in [North Dakota Century Code] Section 14–05–25.1, [Mrs. Miller] may execute on this judgment and [Mr. Miller] is entitled only to the absolute exemptions from process set forth in N.D.C.C. Section 28–22–02.

(Emphasis in the original.) In conjunction therewith, the state court contemporaneously entered a Qualified Domestic Relations Order which provided, in relevant part, as follows:

1. **Qualified Domestic Relations Order.** This Order creates and recognizes the existence of [Mrs. Miller's] right to receive a portion of [Mr. Miller's] benefits payable under an employer-sponsored defined contribution plan and an employer-sponsored defined benefit pension plan which are qualified under the Internal Revenue [Code] and the Employee Retirement Income e[sic] Security Act of 1974 ("ERISA"). It is intended to constitute a Qualified Domestic Relations Order ("QDRO") under Section 414(p) of the [Internal Revenue Code] and Section 206(d)(3) of ERISA.

. . . .

7. **Amount of [Mrs. Miller's] Benefit.** This Order assigns [Mrs. Miller] a single lump-sum cash payment in the amount of $54,857 of [Mr. Miller's] total account balance and/or [his] vested accrued benefit accumulated under the Plans as of January 31, 1998. In addition, and not included in the net available account balance, is the sum of approximately $4,000.00 in [Mr. Miller's] Loan Fund under the Plan which represents the outstanding principal loan balance as of such date.

[Mrs. Miller's] portion of the benefits described above shall be segregated and separately maintained in Account(s) established on her behalf and shall additionally be credited with any interest and investment income (or losses) attributable thereon from January 31, 1998 until the date of total distribution to [her]. . . .

At the time that [she] elects to receive a distribution from the Plan, [Mr. Miller] will be responsible for paying any applicable withdrawal charges imposed under the plan contract with respect to [her] shares under the Plan.

8. **Commencement Date and Form of Payment to Alternate Payee.** If [Mrs. Miller] so elects, she shall be paid her benefits as soon as administratively feasible following the date this Order is approved as a QDRO by the Plan Administrator, or at the earliest date permitted under the terms of the Plan, if later. Benefits will be payable to [Mrs. Miller] in any form or permissible option otherwise avail-able to participants under the terms of the Plan, including, but not limited to, a single lump-sum cash payment or a direct rollover to any IRA or employer plan that accepts rollovers.

(Emphasis in the original).

Subsequently, on July 6, 1998, Mr. Miller filed both his voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code and his Schedules. In Schedule B, he listed the Plans among his assets of personal property, valuing his interest therein at $134,966.85. In Schedule C, he claimed an exemption of the entirety of his interest in the Plans pursuant to Section 28–22–03.1(3) of the North Dakota Century Code.

Mrs. Miller filed her Motion for Relief from Automatic Stay on August 14, 1998, contending that her former husband "fraudulently claim[ed]" all of the Plans' assets as his own. In support of this contention, Mrs. Miller cites to the state court's June 1 Qualified Domestic Relations Order, which she contends awarded her an ownership interest of $54,857.00 in the Plans or, alternatively, made her "a secured creditor holding a valid and perfected security interest [in the Plans] in the sum of $54,857.00." Mrs. Miller further alleges in her Motion that Mr. Miller filed his bankruptcy case in bad faith in order to evade his divorce obligations to her. Upon these grounds, Mrs. Miller asserts that cause exists to lift the automatic stay, so as to allow her to proceed to obtain distribution of, or to proceed to collect, her share of the Plans' funds. In response, Mr. Miller filed an Objection to the Motion on August 24, 1998, asserting, inter alia, that Mrs. Miller holds "no property ownership interest" in the Plans, but rather only holds a security interest in such; that granting her the relief she has requested would work "an unfair advantage and preference over other creditors of [her] same class"; and denying Mrs. Miller's allegations of bad faith.

On August 17, 1998, Mr. Miller filed his Motion to Avoid Judicial Lien, asserting, inter alia, that he was awarded "sole ownership" of the Plans pursuant to the February 3 Divorce Judgment; that he has exempted the Plans in his bankruptcy Schedules pursuant to Section 28–22–03.1(3) of the North

**916**

Dakota Century Code; that the judicial lien in favor of Mrs. Miller impairs that exemption; and that the Court should order the lien avoided pursuant to Section 522(f) of the Bankruptcy Code. In turn, Mrs. Miller filed an Objection to the lien avoidance Motion on August 27, 1998, on the principal ground that the Plans are ERISA-qualified plans [1] and are thus not property of the bankruptcy estate.

On August 31, 1998, a hearing was held before the Court on the parties' Motions. Thereafter, the parties submitted briefs to the Court in further advancement of their respective positions.

## II. Law

■ Section 541 of the Bankruptcy Code provides for the creation of a bankruptcy "estate" upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a); *see Armstrong v. Hursman (In re Hursman)*, 106 B.R. 625, 626 (D.N.D.1988). Furthermore, the section specifies, and determines, what does or does not constitute property of the bankruptcy estate. *See* 11 U.S.C. § 541; *In re Hursman*, 106 B.R. at 626; *Walsh v. Pennsylvania (In re Kingsley)*, 181 B.R. 225, 231 (Bankr.W.D.Pa.1995). While the general

statement has often been made that once a debtor files his petition in bankruptcy, *all of his property* becomes property of the bankruptcy estate, *see, e.g., Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 736 (Bankr.W.D.Tex. 1995), such assertions are not entirely accurate, for Section 541 excludes certain items of debtor property from ever forming part of the bankruptcy estate.[2] In particular, Section 541(c)(2) "excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.'" *Patterson v. Shumate*, 504 U.S. 753, 755, 112 S.Ct. 2242, 2244, 119 L.Ed.2d 519 (1992) (quoting 11 U.S.C. § 541(c)(2)); *accord In re Baker*, 114 F.3d 636, 638 (7th Cir.1997); *Whetzal v. L.D. Alderson*, 32 F.3d 1302, 1303 (8th Cir.1994); *In re Yonikus*, 996 F.2d 866, 870 (7th Cir. 1993). In its unanimous opinion in *Patterson*, the Supreme Court held that ERISA-qualified plans constitute just such property, by holding that "[t]he anti-alienation provision required for ERISA qualification ... constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate."[3] *Id.* at 760, 112 S.Ct. at 2248; *accord Wear v.*

---

1. A pension or retirement plan which satisfies "all applicable requirements of the Employee Retirement Income Security Act of 1974 (ERISA)" and which, accordingly, contains "the antialienation provision required for qualification under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) ('Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated')[,]" constitutes an ERISA-qualified plan. *Patterson v. Shumate*, 504 U.S. 753, 755, 112 S.Ct. 2242, 2244, 119 L.Ed.2d 519 (1992).

2. It is critical that the distinction between "excluded" and "exempted" property be understood here, for the terms "exclude" and "exempt," as they relate to property in the context of the bankruptcy estate, are not interchangeable. Distinguishing between the two concepts, the Court of Appeals for the Seventh Circuit explained, in *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993), that "[a] debtor's interest in property may be either excluded from the estate under 11 U.S.C. § 541 or exempted under § 522." Property which *is excluded* from the bankruptcy estate never becomes property of the bankruptcy estate; it is neither property of the estate at the inception of the bankruptcy case, nor at any later moment therein. Property which *may be exempted* from the bankruptcy estate becomes so *only after first having been property of the estate*. Al-

though once part of the bankruptcy estate, it is subsequently removed therefrom by resort to exemptions afforded by applicable state or federal law. A possible source for the confusion which sometimes manifests itself in this area is revealed, and well-explained, by the bankruptcy court in *In re Stevens*, 177 B.R. 619 (Bankr. E.D.Ark.1995), as follows: "It is possible that some of the ... confusion arises from the fact that the debtors claim the property as exempt despite the fact that it is not property of the estate. This procedure is due, in part, to a lack of clarity on the part of the petition forms since there is [a] specific schedule in which to list assets not property of the estate, other than the schedule in which the debtors list exempt property." *Id.* at 620 n. 2; *see In re Cathcart*, 203 B.R. 599, 601 n. 1 (Bankr.E.D.Va.1996).

3. As the United States Court of Appeals for the Eighth Circuit explains in *Whetzal*, "[t]he [Supreme] Court relied on ERISA's requirement that approved plans include a provision 'that benefits provided under the plan may not be assigned or alienated.'" 32 F.3d at 1303 (quoting *Patterson*, 504 U.S. at 759, 112 S.Ct. at 2247, in turn quoting 29 U.S.C. § 1056(d)(1)) (second set of internal quotation marks omitted).

*Green (In re Green)*, 967 F.2d 1216, 1217 (8th Cir.1992) (quoting same). Thus, under *Patterson*, a debtor's interest in such plans is "entirely excluded from a bankruptcy estate." *Orr v. Yuhas (In re Yuhas)*, 104 F.3d 612, 614 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2481, 138 L.Ed.2d 990 (1997); *see Johnston v. Mayer (In re Johnston)*, 218 B.R. 813, 815, 817 (Bankr.E.D.Va.1998); *In re Cathcart*, 203 B.R. 599, 601 n. 1 (Bankr. E.D.Va.1996); *Butler v. Becton, Dickinson & Co. (In re Loomer)*, 198 B.R. 755, 759 (Bankr.D.Neb.1996); *In re Holst*, 192 B.R. 194, 198 (Bankr.N.D.Iowa), *aff'd sub nom. Manufacturers Bank & Trust Co. v. Holst*, 197 B.R. 856 (N.D.Iowa 1996); *In re Stevens*, 177 B.R. 619, 620 (Bankr.E.D.Ark.1995); *United States v.. Clark (In re Kazi)*, 165 B.R. 246, 247, 248 (Bankr.S.D.Ill.1994); *In re Dunham*, 147 B.R. 13, 14 (Bankr.E.D.N.C. 1992); *cf. Barkley v. Conner (In re Conner)*, 73 F.3d 258, 259 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996) ("under [*Patterson* ], ERISA plans are *exempted* from the bankruptcy estate") (emphasis added—see footnote one).

██ In the instant matter, it is uncontroverted that the Plans are ERISA-qualified plans. As such, they are excluded from property of the estate under Section 541(c)(2). Therefore, here, as in *In re Yonikus*, the debtor "has put the cart before the horse" in claiming his exemption, for, before an exemption can be claimed in property, the property must first *be* estate property. 966 F.2d at 869. Accordingly, this Court declines to reach the exemption issues raised by Mr. Miller in connection to his interest in the Plans. *See, e.g., Spirtos · v. Moreno (In re Spirtos)*, 992 F.2d 1004, 1007 (9th Cir.1993) (bankruptcy courts should not decide exemption issues concerning property which is not property of the bankruptcy estate); *In re Loomer*, 198 B.R. at 759 (court refused to reach exemption issue concerning ERISA plan, as plan excluded from bankruptcy estate); *In re Holst*, 192 B.R. at 200 (same).

██ The Court next turns to the merits of Mrs. Miller's Motion for Relief from Automatic Stay. The automatic stay is effective upon the debtor's filing of his petition in bankruptcy, and operates to prohibit, inter alia, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Pursuant to Section 362(c)(1), "the stay of an act against property of the estate under subsection (a) . . . continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Where property, such as that at issue in the instant matter, is not, and never has been, property of the estate, it is removed entirely from any interplay or association with the automatic stay. Thus, in short, the automatic stay has no application in relation to Plans, or the debtor's interest therein. Moreover, because the Plans do not constitute property of the estate, they are similarly removed from the compass of this Court's jurisdiction. Accordingly, the Court will grant Mrs. Miller's Motion. She is thus at liberty to pursue her claim or interest against the Plans as best she can, and towards whatever end, in the appropriate forum.

### III. Conclusion

For the foregoing reasons, the Motion to Avoid Judicial Lien filed by Thomas L. Miller on August 17, 1998 is DENIED, and the Motion for Relief from Automatic Stay filed by Judith D. Miller on August 14, 1998 is GRANTED.

**SO ORDERED.**