In re Jerry Lee REED, Debtor.

John Patrick LOWE, Trustee for Jerry Lee Reed, Plaintiff,

v.

Phillip A. YOCHEM, Jr., Trustee, Gray Realty, Brown Beasley & Associates, Thomas B. Ewbank, Jerry Lee Reed and Thomas R. McDade and Dorothy A. McDade, Defendants.

Bankruptcy No. 91–50474.
Adv. No. 94–5116.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 13, 1995.

John Patrick Lowe, Chapter 7 Trustee, Uvalde, TX.

Phillip A. Yochem, Jr., San Antonio, TX, for defendants.

## MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the foregoing matter. John Patrick Lowe, the chapter seven trustee ("Trustee"), has brought this adversary proceeding to avoid postpetition transfers of property of the estate under section 549 of the Bankruptcy Code and for recovery of property under section 550 from Phillip A. Yochem, Gray Realty, Brown Beasley & Associates, Thomas B. Ewbank, Jerry Lee Reed and Thomas R. McDade and Dorothy A. McDade (the "Defendants"). Both parties filed motions for summary judgment, and a hearing was held upon those motions on March 7, 1995. At the close of that hearing, the court took the matter under submission. This memorandum decision and order resolves this matter.

### FACTUAL BACKGROUND

The facts are undisputed. Jerry Lee Reed ("Debtor") filed for chapter 11 relief in February 1991. When the voluntary petition was filed, Debtor and his wife owned a ranch in Bandera County (the "Reed Ranch"). The Debtor claimed the Reed Ranch as his exempt homestead. No one timely objected to the exemption claim during the chapter 11 case.

After the objection period had expired (but still during the chapter 11 case), on May 5, 1992, Debtor and his wife entered into an option agreement to sell the Reed Ranch to one of the Defendants, Thomas B. Ewbank. However, while this option was pending, the Debtor found another buyer and, on August 20, 1992, Debtor and his wife sold the Reed Ranch to William and Willie Dee Bartley, for cash and for a note in the amount of $375,-000.00, payable on or before September 30, 1993 ("the Bartley Note"). This is the note at the center of this lawsuit.

The sale of the Reed Ranch generated a number of expenses. The Debtor and his wife needed to obtain a release of the option held by Ewbank, for example, and to that end executed a note in Ewbank's favor in the amount of $81,750.00. They secured this note with a pledge of the Bartley note. They had also incurred real estate commissions to Gray Realty and Brown Beasley & Associates. The Debtor and his wife paid part of these commissions in cash, and executed two unsecured notes for the balance, each in the amount of $11,250.00. To assure that all these notes would be satisfied out of the Bartley Note while protecting their own interest in the balance, the Debtor and his wife placed the Bartley Note into a trust with the Debtor's lawyer, Phillip A. Yochem Jr., for the benefit of all the parties.

On February 16, 1993 (while the Debtor was still in chapter 11), Debtor and his wife purchased a new ranch as their home from Thomas and Dorothy McDade. As part of the purchase price, Debtor and his wife executed a note payable to the McDades in the amount of $583,637.67. The note was secured by a mortgage on the new ranch, as well as by a pledge of the Bartley Note. Phillip A. Yochem was accordingly notified that now, the Bartley Note was to be held in trust for the McDades as well as for the other parties.

The Debtor's chapter 11 case was converted to chapter 7 on May 19, 1993, and John Patrick Lowe was appointed Trustee. On July 27, 1993 (i.e., post-conversion), the Bartleys paid off the Bartley Note. Phillip A. Yochem, who had received its proceeds, then

disbursed the monies in accordance with the trust agreement, as follows:

| | |
|---|---|
| Thomas and Dorothy McDade | $167,352.12 |
| Thomas Ewbank | $ 82,714 |
| Gray Realty | $ 11,250 |
| Brown Beasley & Associates | $ 11,250 |
| Phillip Yochem | $ 1,360.28 |
| Debtor and his wife | $106,574.28 |

The Debtor received his discharge on December 17, 1993. The Trustee then brought this adversary proceeding to avoid, under section 549(a)[1] what he contends were unauthorized transfers of property of the estate postpetition, to wit the payment of the proceeds of the Bartley Note to the named Defendants. The Trustee's position is that the Bartley Note became property of the chapter 11 estate six months following the sale of the Reed Ranch, and part of the chapter 7 estate following conversion. *See* TEX.PROP.CODE ANN. § 41.001(c) (Vernon Supp.1994); *Matter of England,* 975 F.2d 1168, 1174 (5th Cir.1992); 11 U.S.C. §§ 348(a), 541(a)(7). He seeks to recover the value of these transfers from the transferees. 11 U.S.C. § 550.

## DISCUSSION

### I. *The Arguments and the Issue*

The Trustee's case stands or falls on his contention that the Bartley Note was property of the estate when the transfers of the note proceeds were made out of the trust by Mr. Yochem. No one disputes that the transfers were made postpetition, and without authorization either by any provision of the Bankruptcy Code, or by the bankruptcy court. The Defendants only contend that the Bartley Note and its proceeds were never property of the estate, so that section 549(a) was never implicated. The case turns, then, on whether the Defendants are right.

### II. *What is Property of the Estate?*

The commencement of a bankruptcy case creates a bankruptcy estate.[2] 11 U.S.C. § 541(a). The property which makes up this "estate" is defined by the several subsections (1)–(7) of section 541(a). Two of these subsections, (a)(1) and (a)(2) say that all property interests belonging to the debtor at the time of filing become property of the estate. 11 U.S.C. § 541(a)(1), (2). These two subsections do not apply to this case, because neither the Bartley Note nor its proceeds even existed at the commencement of the case.

■ As a general rule, property acquired by the *debtor* postpetition does not become property of the estate. 4 KING, COLLIER ON BANKRUPTCY ¶ 541.05 (15th ed. 1994). There are certain exceptions, however. For example, interests inherited by the debtor within the 180 days after the bankruptcy come into the estate. 11 U.S.C. § 541(a)(5)(A). Similarly, property acquired by the debtor as a result of a property settlement in a divorce or as the beneficiary of a life insurance policy become estate property. 11 U.S.C. § 541(a)(5)(B), (C). Proceeds, product, offspring, rents or profits of or from property of the estate themselves also become property of the estate. 11 U.S.C. § 541(a)(6).[3] Finally, "[a]ny interest in property that the estate acquires after the commencement of the case" becomes "property of the estate." 11 U.S.C. § 541(a)(7).

■ Only the last two of these provisions could conceivably come into play in this case. Both the Bartley Note and its proceeds were generated by the disposition of the Debtor's homestead. Absent bankruptcy, under state law, these proceeds would have ceased to be

---

**1.** (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

  (1) [made] that occurs after the commencement of the case; and

  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

  (B) that is not authorized only under this title or by the court.

11 U.S.C. § 549(a).

**2.** Section 541(a) provides:

  The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

  11 U.S.C. § 541(a).

**3.** An exception not relevant to this case is included in subsection 541(a)(6) for "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. 541(a)(6).

exempt six months thereafter.[4] *See Matter of England,* 975 F.2d 1168, 1174 (5th Cir. 1992). Conceivably, these proceeds might be the "proceeds ... of or from property of the estate," under section 541(a)(6). Alternatively, they might if they are deemed to be property acquired by the estate, then become property of the estate under subsection (a)(7). We turn to each of these possibilities next.

### A. May Proceeds of Exempt Property Become Property of the Estate under section 541(a)(6)?

When a debtor files for bankruptcy, *all* of the debtor's property becomes property of the estate. 11 U.S.C. § 541(a)(1), (a)(2). This necessarily includes any property which the debtor intends to claim as exempt under section 522.[5] *Taylor v. Freeland & Kronz,* 503 U.S. 638, 641, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). Unless the debtor takes affirmative steps to claim property as exempt, the property will remain in the estate. *See Hardage v. Herring Nat. Bank,* 837 F.2d 1319, 1322 (5th Cir.1988).[6] By the same token, if the debtor claims property as exempt in his schedules, then interested parties must affirmatively object within thirty days of the first meeting of creditors, or the property will be deemed exempt. 11 U.S.C. § 522(*l*); FED.R.BANKR.P. 4003; *Taylor supra,* 503 U.S. at 642, 112 S.Ct. at 1648. This result will follow regardless whether the debtor had even a colorable statutory basis for claiming the exemption. *Id.*

The proper date for determining whether an exemption exists is, in the usual case, the date of filing of the bankruptcy petition. *Owen v. Owen,* 500 U.S. 305, 314 n. 6, 111 S.Ct. 1833, 1838 n. 6, 114 L.Ed.2d 350

(1991). *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924); *Armstrong v. Peterson (In re Peterson),* 897 F.2d 935, 937 (8th Cir.1990); *Stinson v. Williamson (Matter of Williamson),* 804 F.2d 1355, 1359 (5th Cir.1986); *Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967); *In re Combs,* 166 B.R. 417, 418–19 (Bankr.N.D.Cal.1994). The Trustee admits that the Debtor's original homestead was itself exempt property for bankruptcy purposes, because the Debtor properly claimed the exemption in his chapter 11 schedules and no party timely objected. 11 U.S.C. § 522(*l*); *Taylor, supra.* The Trustee argues however that the postpetition *transformation* of this otherwise exempt homestead property into proceeds which would have become *nonexempt* under state law during the chapter 11 case must mean that these proceeds then became property of the estate.

The majority of courts, however, hold that a postpetition change in the character of property properly claimed as exempt will *not* change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact. *Peterson,* 897 F.2d at 937 (debtor's postpetition death did not cause his homestead exemption to lapse); *Payne,* 775 F.2d at 204 (insurance proceeds of destroyed exempt property did not become property of the estate); *Lasich v. Estate of A.N. Wickstrom (Matter of Wickstrom),* 113 B.R. 339, 343–44 (Bankr. W.D.Mich.1990) (debtor's postpetition death did not cause exempt worker's compensation proceeds to lapse); *In re Whitman,* 106 B.R. 654, 656–57 (Bankr.S.D.Cal.1989) (conversion of homestead to proceeds postpetition does not cause proceeds to become property of the

---

4. In this case, the Bartley note and its proceeds were not reinvested in another homestead within six months. Meanwhile, the case remained open.

5. In this way section 541(a)(1) has the effect of overruling the United States Supreme Court's holding in *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). Under 541(a)(1) all property of the debtor becomes property of the estate, including exempt property. H.R.Rep. No. 595, 95th Cong., 1st Sess. 6/367–68 (1977); S.Rep. No. 989, 95th Cong., 2d

Sess. 82–3 (1978), 1978 U.S.Code Cong. and Admin.News, 5787, 5967, 6322–24, 5868–69.

6. Section 522(*l*) provides the procedure for debtors claiming exemptions, and also provides for parties seeking to object to the debtor's claimed exemptions. That section states:

    The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt.

    11 U.S.C. § 522(*l*).

estate); *In re Harlan,* 32 B.R. 91, 92–93 (Bankr.W.D.Tex.1983) (same). The thrust of these cases is that property which is deemed to be exempt is deemed, as of that point, no longer to be property of the estate, so that its subsequent transformation does not restore it to the estate. *See Owen v. Owen,* 500 U.S. 305, 307–08, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) ("[a]n exemption is an interest *withdrawn from* the estate (and hence its creditors) for the benefit of the debtor") (emphasis added).

■ The conclusion reached by these cases is supported by the language of section 522(c), which says that

> [u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case . . .

11 U.S.C. § 522(c). This provision essentially "immunizes" exempt property against any liability for prepetition debts. *Owen,* 500 U.S., at 307, 111 S.Ct., at 1835. This immunization continues even after the bankruptcy case is closed. The practical implication is that such property is forever protected from the claims of pre-petition creditors, and is essentially removed from the bankruptcy process. *Id.; see also In re Donaldson,* 156 B.R. 51, 53 (Bankr.N.D.Cal.1989).

No change in the form or character of the exempt property should change this result. Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property. If the debtor decides, as part of his fresh start, to sell the house, buy a Winnebago, and travel around the country from campground to campground with his wife and his dog, the statute appears to place no impediment in his path. True enough, the Winnebago may not be exempt from obligations he incurs after his discharge (depending on state law), but it should not be vulnerable to the satisfaction of any of the debtor's prepetition obligations. Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy.

■ We join the majority of courts that have ruled on this issue, concluding that a postpetition transformation of exempt property into a form of property which would not be exempt under state law does not return the property to the estate.[7]

■ Furthermore, because the property, once deemed exempt, is withdrawn from the estate, any proceeds from the disposition of that property do not come into the estate via section 541(a)(6). That section only sweeps up proceeds from dispositions of property of the estate. It will not apply to dispositions of non-estate property, such as transformations of property properly exempted out of the estate via section 522(*l*). There is no question that the Bartley Note and its proceeds were generated by the sale of properly exempt homestead property. Thus, the Bartley Note and its proceeds could not have been property generated by property of the estate.

Nor is this court's prior ruling *In re Bartlett,* 149 B.R. 446 (Bankr.W.D.Tex.1992) to the contrary. There, the property in question was *acquired* by the debtor during the pendency of a *chapter 13* proceeding. Of course, the rules for what constitutes property of the estate are considerably expanded in chapter 13 by the operation of section 1306, so that property acquired by the debtor post-petition is property acquired by the estate, for so long as the chapter 13 debtor remains "in possession." *See* 11 U.S.C. § 1327(a) (property of the estate revests in the debtor upon confirmation, unless the court orders otherwise).

---

7. It is important to note here that the court is *not* holding that the proceeds of the disposition of exempt property are therefore also "exempt." When a debtor claims exemptions under state law, only state law controls whether a given property is "exempt." Our holding is only that, under bankruptcy law, if a given property owned by the debtor as of the filing is deemed to be exempt, the property is removed from the estate. It is no longer property of the estate. The conversion of that property into some other form which, under applicable law, would not be exempt will not restore the property to the estate, but that is not the same as saying the property as transmogrified is still exempt.

## B. *Section 541(a)(7) and Herberman*

■ The Trustee also argues that, under section 541(a)(7), the Bartley Note and its proceeds became property of the estate because they were acquired by the Debtor postpetition while the Debtor was still in chapter 11.[8] Even though the Bartley Note and its proceeds were *proceeds* of exempt property, the Bartley Note and its proceeds are not themselves exempt. Thus, says the Trustee, the Bartley Note and its proceeds became property acquired by the estate, relying on this court's interpretation of section 541(a)(7) in *Herberman*. *In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex.1990). In particular, the Trustee points to that part of the *Herberman* decision which states, "[t]here can be no 'part' of the chapter 11 debtor that is not 'in bankruptcy' during the pendency of a chapter 11 proceeding." *Id.* at 279. The Trustee believes that this passage from *Herberman* establishes that *any* property acquired by the *chapter 11 debtor* postpetition must be an "interest in property acquired by the estate after the commencement of the case."

The passage upon which the Trustee relies cannot be read in isolation, however. In *Herberman,* the issue was whether personal earnings of a sole-proprietor chapter 11 debtor became property of the estate under section 541(a)(7). Subsection (a)(7) of course reaches any interests in property which the *estate* acquires during the pendency of the case. *Id.* at 278. This court posited that, in chapter 11, the term *estate* encompasses more than just property. *Id.* at 278–79. A chapter 11 estate is more properly thought of as an "enterprise," continuing to operate during the pendency of the bankruptcy case. *Id.* All property interests generated by this estate "enterprise" logically fit into section 541(a)(7) as property "acquired by the estate" during the pendency of the bankruptcy. *Id.* (citing 11 U.S.C. § 541(a)(7)).

This was not the end of the *Herberman* analysis, however. Still remaining was the narrower question whether postpetition earnings of a sole-proprietor debtor were in fact earnings generated by this estate "enterprise." *Id.* at 279. The court recognized that, in the usual case, during the reorganization effort, the estate "enterprise" is operated by the debtor, as debtor-in-possession. *See* 11 U.S.C. § 1101, 1107. The individual debtor also works *for* the estate as operator of the estate "enterprise." *See* 11 U.S.C. § 1108. Thus, the individual chapter 11 debtor wears two hats, both commanding (as trustee) and working for the bankruptcy estate "enterprise." *Id.*

This was the context in which the court made the statement, "there can be no part of the debtor which is not in bankruptcy."[9] In making this statement the court was not interpreting section 541(a)(7) to mean that *all interests in property* which the *debtor* might acquire postpetition become property of the bankruptcy estate. Such an interpretation would contradict other provisions of the selfsame Code section, most notably sections 541(a)(5) and (6). If the phrase were taken literally and torn from its contextual moorings, it would mean that even the earnings set aside for the debtor in *Herberman* as his own under section 541(a)(6) would be swept right back into the estate again by section 541(a)(7). That was certainly not the court's intention at the time, and it is not the court's interpretation today.

By this statement, the court was merely recognizing that, when a debtor acts in the dual roles of trustee and employee, the debtor does not have the right to pick and choose when it acts for the estate "enterprise" and when it acts for itself. The debtor cannot blithely claim all earnings of the estate "enterprise" as his own "earnings," even though

---

8. The argument could not have been made had this been a chapter 7 case from the beginning. Property acquired by a chapter 7 debtor after filing is, by definition, not property "that the estate acquires." 11 U.S.C. § 541(a)(7). Only in chapter 11 are the dual roles of trustee and debtor melded into a single person.

9. Perhaps the court could have been more precise by saying that there is no part of the estate enterprise which is not in bankruptcy. Yet greater precision would also have contributed to greater confusion, for a number of provisions in title 11 protect the individual debtor during the pendency of the case, for so long as the debtor is "in" bankruptcy. *See, e.g.,* 11 U.S.C. § 362(a)(1), (2), (5), (6), (7).

those earnings are generated by the debtor's own personal efforts. *Id.* at 280. The debtor is first and foremost a trustee, with a fiduciary obligation to operate the estate enterprise for the benefit of the estate's beneficiaries, and only secondarily for the benefit of itself as debtor employee. In this way, the individual chapter 11 debtor is no different from any other estate "enterprise." *Id.* The enterprise itself is completely in bankruptcy, and no part of that enterprise can be treated as not in bankruptcy. The individual debtor who files chapter 11 bankruptcy voluntarily subjects himself to this fiduciary obligation to operate his business first and foremost for the benefit of the creditors, and to subordinate his personal interests to that higher duty. Thus, the postpetition earnings generated by a sole-proprietor debtor become in the first instance property of the estate under section 541(a)(7). *Id.* The debtor as trustee may then pay out of those earnings an appropriate salary to himself as employee, at which point, by virtue of section 541(a)(6), those funds leave the estate (even though they do not leave the debtor). At that point, the debtor *qua* debtor is free to dispose of those funds as he sees fit, without having to further account to the bankruptcy estate, his creditors, or any subsequently appointed trustee.

When the entire context is understood, it becomes obvious that the statement upon which the Trustee relies does not apply here. As *Herberman* points out, the decisive issue under section 541(a)(7) is whether the particular property interest in question was acquired by the *estate* (i.e. can the property interest be properly classified as a property interest generated by the estate "enterprise"). Here, the Bartley note and its proceeds cannot in any meaningful sense be said to have been generated by the efforts of the estate enterprise. Rather, when the debtor was selling his homestead, he had of necessity laid aside his "trustee hat." The property with which he was dealing had already been "withdrawn from the estate," in the words of *Owen v. Owen.* The Reed Ranch was more precisely analogous to the "wage" which this court carved out for Dr. Herberman at the conclusion of that decision than to the enterprise revenues to which the phrase upon which the Trustee here relies referred. Just as Dr. Herberman was free to then use the wage allowed him by the court to buy food, shelter, clothing, or, if he chose, to unwisely invest in penny stocks in gold mine ventures, so also was the Debtor here free to dispose of the Reed Ranch, property which had been removed from the estate, without further accounting to his prepetition creditors for its disposition. Dr. Herberman's "wage" was removed from the estate via section 541(a)(6). Mr. Reed's homestead was removed from the estate via section 522(*l*). But the analysis is no different in either case.

The Bartley Note was generated by the debtor's disposition of the Reed Ranch, which had already been withdrawn from the estate by operation of section 522(*l*). It was not generated by the estate enterprise over which Mr. Reed presided as debtor-in-possession. What Mr. Reed as an individual chose to do with his own property, property previously set aside from the estate, was his own business. He could have used the proceeds to buy another ranch for cash. He could have invested in penny stocks in gold mine ventures. He could have bought a Winnebago. None of those activities would have operated to restore the Bartley Note, or anything he bought with its proceeds, to the bankruptcy estate. As it is, he chose to use the funds to pay off obligations associated with his sale of the Reed Ranch, and to help pay off a portion of his debt to the McDade's for his new homestead. The Bartley Note and its proceeds may not have been exempt property under Texas law, but neither were they property acquired by the estate enterprise during the pendency of the chapter 11 case. Accordingly, neither section 541(a)(7) nor this court's interpretation of that section in *Herberman* is applicable, and neither the Bartley Note nor its proceeds became property of the estate, even though they lost their exempt character as proceeds of a homestead under state law.

### Conclusion

Based upon the foregoing the court concludes that the summary judgment in favor of the Defendants is proper. Section 549(a) provides that the trustee may avoid unautho-

rized postpetition transfers of "property of the estate." While it is undisputed that the transfers made here of the Bartley Note and its proceeds were both postpetition and unauthorized, the Bartley Note and its proceeds were never "property of the estate." Because the Trustee will be unable to prove this element, the avoidance action under section 549(a) cannot succeed. Summary judgment in favor of the Defendants is therefore appropriate.

A separate form of judgment will be entered, consistent with this decision.

So **ORDERED**.