In re Maurice F. CUNNINGHAM,
Debtor.

William J. Pasquina, P.C.,
Plaintiff/Appellant,

v.

Maurice F. Cunningham,
Defendant/Appellee.

Civil Action No. 06–40008–FDS.

United States District Court,
D. Massachusetts.

Nov. 28, 2006.

John G. Neylon, Neylon & O'Brien, P.A., Boston, MA, for Plaintiff/Appellant.

George J. Nader, Riley & Dever PC, Lynn, MA, for Defendant/Appellee.

United States Bankruptcy Court, U.S. Bankruptcy Court, pro se.

### MEMORANDUM AND ORDER ON APPEAL FROM BANKRUPTCY COURT

SAYLOR, District Judge.

This is an appeal from an order of the United States Bankruptcy Court confirming that proceeds from the sale of debtor's home are exempt from appellant's pre-petition debt.

Debtor Maurice F. Cunningham claimed a homestead exemption under Massachusetts law in his home in North Andover, Massachusetts. He then filed for bankruptcy. After the allowance of the homestead exemption by the Bankruptcy Court, he moved to a Florida vacation property that was held in the name of his wife, sold the Massachusetts property, and kept the proceeds. Plaintiff William J. Pasquina is owed a pre-petition, non-dischargeable debt by Cunningham, and seeks to satisfy it against the proceeds. Thus, the issue presented is whether proceeds realized by a debtor from the post-petition, voluntary sale of his home—in which he had an "estate of homestead" under state law, and for which he claimed and received an exemption in the bankruptcy proceedings—may be liable for a pre-petition, non-dischargeable debt. For the reasons set forth below, the answer to that question is in the negative. The order of the Bankruptcy Court will therefore be affirmed.

### I. Background

William Pasquina and Maurice Cunningham were high school classmates who be-

came attorneys. Pasquina practiced law through a professional corporation, of which he was the sole shareholder. He hired Cunningham as an associate attorney and trained him to handle worker's compensation and Social Security cases.

In February 1995, Pasquina was seriously injured in an automobile accident. He was out of the office for an extended period of time and, in fact, never returned to the full-time practice of law. After the accident, Cunningham managed the law office and handled the entire case load.

By November 1995, Pasquina had determined that he could not continue to practice law. He and Cunningham began to discuss the sale of the practice to Cunningham. At some point, Cunningham also began to negotiate with another law firm, Pierce & Associates, concerning the possibility of joining that firm. He apparently never reached final arrangements with either firm. Nonetheless, Pasquina and Pierce sent letters to Pasquina's clients and referral attorneys indicating that Cunningham would join Pierce and provide continuity in representation.

Instead, Cunningham secretly removed files from the Pasquina law office and opened his own firm servicing the former Pasquina clients. Cunningham never paid Pasquina his fair share of the fees earned as to those clients, nor did he reimburse Pasquina for expenses advanced.

In June 1997, Pasquina filed suit against Cunningham in the Essex Superior Court claiming, among other things, breach of the duty of loyalty. After a jury trial as to certain claims and counterclaims, the parties tried the duty of loyalty claim before the Superior Court (Kottmyer, J.). Judge Kottmyer issued her findings of fact and conclusions of law on March 22, 2001, and entered judgment against Cunningham on the duty of loyalty claim.[1]

In October 2001, Cunningham filed a declaration of homestead as to his residence at 795 Johnson Street in North Andover, Massachusetts.[2] On December 12, 2002, Pasquina obtained a writ of attachment in the Superior Court against the Johnson Street property in the amount of $250,000.

On February 28, 2003, Cunningham filed a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code. At that time, Cunningham and his wife resided at the Johnson Street property, which they jointly owned as tenants by the entirety. Cunningham listed the Johnson Street property as an asset on his bankruptcy schedules. He claimed that the outstanding mortgages on the property totaled $260,000 and that his equity interest was $212,000. He also claimed that the estate of homestead in the residence, to the extent of $300,000, was exempt from the bankruptcy estate pursuant to MASS. GEN. LAWS ch. 188, § 1. *See* 11 U.S.C. § 522(b). In addition, he disclosed the judgment obtained against him by Pasquina and the resulting $250,000 lien on the Johnson Street property.

---

1. At that time, judgment was in the amount of $191,072.20, plus interest. Judge Kottmyer also declared that Pasquina was entitled to recover damages on certain cases that Cunningham was handling that had not been resolved as of the date of trial, and that a portion of the fees and expenses paid to him in those cases should be held in constructive trust for Pasquina. The Superior Court ultimately entered a final judgment against Cunningham on April 1, 2003 for more than $288,000.

2. It appears that Cunningham and his wife occupied 795 Johnson Street as their principal residence. Pasquina does not contend that the estate of homestead was not validly obtained.

The deadline for objecting to Cunningham's claimed exemption in the residence was May 30, 2003. Pasquina did not object, and the exemption was allowed by the Bankruptcy Court.

On July 24, 2003, Pasquina initiated an adversary proceeding in the Bankruptcy Court, seeking an order that the debt was non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) (debts for fraud while acting in a fiduciary capacity) and (a)(6) (debts for willful and malicious injury by the debtor).

On January 29, 2004, Cunningham moved pursuant to 11 U.S.C. § 522(f) for an order avoiding Pasquina's $250,000 writ of attachment.[3] In that motion, Cunningham stated that the residence was appraised at $495,000 and subject to outstanding mortgages totaling $260,000. He argued that, absent the lien, his equity interest in the property at most would be $235,000. Therefore, he argued, the lien impaired his $300,000 homestead exemption and should be avoided.

On February 4, Pasquina filed an objection to the $300,000 homestead exemption and to the § 522(f) lien avoidance motion. On February 12, he moved for an attachment on the Johnson Street property in the amount of $350,000. On June 4, the Bankruptcy Court entered an order denying Pasquina's objections, denying his motion for an attachment, and avoiding the lien in its entirety. Among other things, the court found that the objection to the exemption was time-barred and that the lien avoidance issue was controlled by the First Circuit's decision in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir.1999). The court

also sanctioned Pasquina for filing the objections, which it determined were frivolous. Pasquina did not appeal that order.

In approximately December 2004, Cunningham closed down his law practice. He and his wife moved to a condominium in Bonita Springs, Florida, that was held in her name and that the couple had formerly used as a vacation and rental property. It is not clear when the condominium was purchased, although it apparently predated the filing of the bankruptcy petition.

On July 26, 2005, the Bankruptcy Court entered an order that Cunningham's debt to Pasquina was non-dischargeable under §§ 523(a)(4) and (a)(6). Shortly thereafter, on September 20, 2005, it closed the adversary proceeding.

In the meantime, Cunningham had apparently listed the Johnson Street property for sale. On August 18, 2005, Pasquina filed a motion in the Superior Court requesting that Cunningham and his wife be enjoined from disbursing or using proceeds from the sale.

On September 14, the Superior Court enjoined Cunningham and his wife from removing any share of the sale proceeds "remaining after satisfying existing mortgages and expenses related to the closing of the sale and which exceed the $300,000 homestead exemption." One week later, Pasquina filed an emergency motion in the Superior Court action arguing that the $300,000 homestead exemption had terminated, and that the sale proceeds should be available to satisfy the Pasquina debt, because (1) the exemption did not extend to the cash proceeds derived from the sale of exempt assets and (2) Cunningham al-

---

**3.** Section 522(f) provides that "the debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" under

§ 522(b). Although certain exceptions apply—for example, judicial liens securing a child support debt—they are not relevant here.

legedly vacated the property post-petition, thereby destroying the exemption. He also contended that Cunningham's wife was entitled to at least one-half of the sale proceeds and that her share was not protected by the $300,000 homestead exemption.

On November 3, Cunningham filed a "Motion for Order Confirming Sale Proceeds ... as Exempt" in the Bankruptcy Court seeking a determination that the proceeds realized from the post-petition sale of the Johnson Street property were exempt, and therefore protected from liability on the Pasquina debt, by virtue of § 522(c). The motion stated that Cunningham planned to sell the property so that he could "use the proceeds to pay for living expenses and downsize to a smaller home."

On November 21, the Cunninghams sold the Johnson Street property. The net sale proceeds, after satisfying the mortgages and other sale expenses, were $150,723.42. There is no evidence that Cunningham has reinvested, or intends to reinvest, any part of the proceeds into another residence; it appears, instead, that he has made the Florida condominium his primary residence for the indefinite future.

On December 7, the Bankruptcy Court entered an order that the proceeds from the sale of the Johnson Street property were exempt from liability for the Pasquina debt under 11 U.S.C. § 522(c). With regard to Pasquina's contention that the non-debtor spouse was entitled to one-half of the proceeds and that her share is not protected, the Bankruptcy Court stated that (1) it had no jurisdiction over the debtor's wife, and therefore could not adjudicate her rights in the proceeds, and (2) even if it did have jurisdiction, it would not exercise it, as this issue was the subject of a supplemental brief filed by Pasquina and pending in the state court.

On December 14, Pasquina filed a notice of appeal with respect to the December 7 order, and an election that the appeal be heard by this Court. He also filed a motion for preliminary injunction, asking that Cunningham be enjoined from spending more than $500 per month from the sale proceeds, as well as a request that this Court certify a question of law to the First Circuit and/or the Supreme Judicial Court.

## II. *Jurisdiction and Standard of Review*

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court. 28 U.S.C. §§ 157, 158, 1334. On appeal, this Court "may affirm, modify, or reverse ... or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013.

■ A debtor's entitlement to a bankruptcy exemption is a question of law that is subject to *de novo* review. *In re Hildebrandt,* 320 B.R. 40, 43 (1st Cir. BAP 2005); *see also In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir.1992).

## III. *Analysis*

Pasquina challenges the Bankruptcy Court's determination that the proceeds from the voluntary sale of Cunningham's home remain exempt from his pre-petition, non-dischargeable debt. In support of this challenge, Pasquina contends that Massachusetts law governs whether the proceeds are exempt, and that the Massachusetts Homestead Act should be construed so that the exemption ends upon the voluntary sale of the homesteaded property. Cunningham responds that, even if Massachusetts law should be so construed, it is preempted by the federal bankruptcy principle that property exempted under § 522 generally shall not be liable for pre-peti-

tion debts (with certain exceptions not relevant here).

The starting point of the Court's analysis is the manner in which state homestead exemptions fit into the federal bankruptcy scheme.

### A. Exemptions Under the Bankruptcy Code

■ An estate in bankruptcy is created upon the filing of a Chapter 7 petition. 11 U.S.C. § 541(a). All of the debtor's interests in property, legal and equitable, are included in that estate. 11 U.S.C. § 541(a)(1); *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The debtor may claim that certain interests in property are exempt from the estate. 11 U.S.C. § 522. "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen*, 500 U.S. at 308, 111 S.Ct. 1833.

### 1. State Law Exemptions

A determination of the exemptions to which a debtor is entitled sometimes involves the application of both federal and state law. As the Supreme Court stated in *Owen*:

> Section 522 [of the bankruptcy code] determines what property a debtor may exempt. Under § 522(b), he must select between a list of federal exemptions (set forth in § 522(d)) and the exemptions provided by his State, "unless the State law that is applicable to the debtor ... specifically does not so authorize,"

§ 522(b)(1)—that is, unless the State "opts out" of the federal list. If a State opts out, then its debtors are limited to the exemptions provided by state law. 500 U.S. at 308, 111 S.Ct. 1833.[4]

■ Massachusetts has not opted out of the federal list. Accordingly, Massachusetts-resident debtors may claim the exemptions of either the federal or the Massachusetts list. *In re Garran*, 338 F.3d 1, 4 (1st Cir.2003). Cunningham chose the Massachusetts list.

A homestead exemption is one of the exemptions provided by Massachusetts law. Chapter 188 of Massachusetts law sets forth what is known as the "Homestead Act." It defines "an estate of homestead" as follows:

> An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence.

MASS. GEN. LAWS ch. 188, § 1.[5] It then exempts this estate "from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies," except certain debts, such as "a debt contracted prior to the acquisition of said estate of homestead," "a debt contracted for the purchase of said home," and certain judgments "based upon fraud, mistake, duress, undue influence or lack of capacity." *Id.*

---

**4.** Claimed exemptions may include, for example, a debtor's (or in some cases, his dependent's) interest in real property or personal property used as a residence; in a motor vehicle; in household furnishings; in wearing apparel; in jewelry; in books or tools for professional use; in certain insurance policies; in alimony or child support; · and in certain private and public benefits. 11 U.S.C. § 522(d). These interests are, in general, capped at certain dollar amounts. *Id.*

**5.** After the events occurring in this case, the statute has been amended to allow the acquisition of an estate of homestead up to $500,000.

In this case, Cunningham claimed a $300,000 homestead exemption in the Johnson Street property, which was allowed by the Bankruptcy Court.

## 2. *Section 522(c)*

██ Once a debtor's claimed exemption is allowed by the Bankruptcy Court, the exempted property falls under the coverage of § 522(c) of the Bankruptcy Code. Section 522(c) states:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except [certain debts not relevant here, such as tax and child support obligations].

11 U.S.C. § 522(c). Thus, § 522(c) immunizes properly exempted property from all pre-petition debts, except for those non-dischargeable debts expressly enumerated in the statute. *See Owen*, 500 U.S. at 308, 111 S.Ct. 1833 ("Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts."); *see also In re Donaldson*, 156 B.R. 51, 53 (Bankr. N.D.Cal.1993) (stating that "[p]roperty which has been claimed exempt is forever protected from most prepetition creditors"). "The clear intent of Congress in section 522(c) was to preserve property exempted in bankruptcy for satisfaction of tax and support obligations and, if the debtor has no such debts, for the debtor's fresh start." *In re Farr*, 278 B.R. 171, 177 (9th Cir. BAP 2002) (citation omitted).

The scope of § 522(c) is central to this dispute. Pasquina concedes (1) that Cunningham's $300,000 homestead exemption was allowed by the Bankruptcy Court; (2) that Pasquina's pre-petition debt, although found by the Bankruptcy Court to be non-dischargeable, does not fall within any of the exceptions enumerated in § 522(c);

and therefore (3) that § 522(c) precludes Pasquina from taking action against the Johnson Street property to the extent of $300,000, both during *and after* the bankruptcy case. The question remains, however, whether § 522(c) similarly protects proceeds from the voluntary sale of that homesteaded property.

## B. *Whether 11 U.S.C. § 522(c) Protects Proceeds from a Post–Petition Sale of Exempt Property*

██ Pasquina contends that because Cunningham chose the Massachusetts exemption list, Massachusetts law determines whether the proceeds qualify for "exempt" status. He then contends that the Massachusetts Homestead Act should be construed to exclude homestead proceeds. Thus, he concludes, proceeds from the sale of Cunningham's home are not "exempt" for purposes of § 522(c) and are therefore liable for his pre-petition, non-dischargeable debt.

██ It is true that where a debtor chooses the state exemption list pursuant to § 522(b), state law determines "the nature and amount of property that can be exempted." *See Bruin Portfolio, LLC v. Leicht (In re Leicht)*, 222 B.R. 670, 678 (B.A.P. 1 st Cir.1998) (citation omitted). The Court disagrees, however, with Pasquina's ultimate conclusion that proceeds generated by the post-petition sale of previously exempted property are not protected by § 522(c).

██ "It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition." *In re Friedman*, 38 B.R. 275, 276 (Bankr. E.D.Pa.1984). This means the Court must "focus only on the law and *facts* as they exist *on the date of filing the petition*." *In re Peterson*, 897 F.2d 935, 937 (8th Cir. 1990) (emphasis added). If Cunningham

had sold his home prior to filing for bankruptcy, Pasquina's approach would be appropriate; that is, the Court would have to interpret Massachusetts law to determine whether the sale proceeds should be exempted from the bankruptcy estate.[6] As of the date of the bankruptcy filing, however, Cunningham and his wife were still residing at 795 Johnson Street. Thus, as the facts existed on that date, the debtor was entitled to the homestead exemption, which the Bankruptcy Court allowed. The only real issue, then, is whether a *postpetition change* in the character of the property—here, a conversion from exempted real estate to proceeds that may or may not be exempt under state law—can cause the property to *lose* its "exempt" status for purposes of § 522(c).

### 1. *The Bankruptcy Court's Opinion*

 The Bankruptcy Court below found that post-petition conduct cannot remove previously exempted property from § 522(c)'s protection. *In re Cunningham,* 2005 WL 3348861, at *2 (Bankr.D.Mass. Dec.7, 2005). In so finding, it adopted the reasoning and holding of *In re Reed,* 184 B.R. 733, 737–38 (Bankr.W.D.Tex.1995).

*Reed* involved a bankruptcy debtor who claimed a homestead exemption in his ranch pursuant to Texas state law. 184 B.R. at 735. After his homestead exemption was allowed by the bankruptcy court, the debtor sold the property. *Id.* However, because he failed to reinvest the sale proceeds in another homestead within six months, the proceeds ceased to be exempt under Texas law. *Id.* at 736–37.[7] The Chapter 7 trustee then argued "that the postpetition *transformation* of this otherwise exempt homestead property into proceeds which would have become *nonexempt* under state law during the chapter 11 case must mean that these proceeds then became property of the estate." *Id.* at 737 (emphasis in original). In rejecting the trustee's argument and holding that the proceeds did not return to the estate, the court stated:

> The majority of courts, however, hold that a postpetition change in the character of property properly claimed as exempt will *not* change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact.

*Id.* at 737 (emphasis in original). It went on to observe:

> [Section 522(c)] essentially "immunizes" exempt property against any liability for prepetition debts. This immunization continues even after the bankruptcy case is closed. The practical implication is that such property is forever protected from the claims of pre-petition creditors, and is essentially removed from the bankruptcy process. No change in the form or character of the exempt property should change this result. Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property.

*Id.* at 738 (citations omitted).

The reasoning of *Reed* thus suggests that Cunningham's post-petition conduct (the voluntary sale of the Johnson Street property) and the change in character of his properly exempted property (from

---

6. Assuming, of course, that Cunningham had chosen the Massachusetts, rather than the federal, exemption list.

7. Tex. Prop.Code Ann. § 41.001(c) provides as follows: "The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."

homesteaded real estate to cash proceeds) does not remove that property from the protections of § 522(c), and that the property remains exempt.

That conclusion is supported by the case law of other circuits. *See, e.g., In re Herman,* 120 B.R. 127, 130 (9th Cir. BAP 1990) ("[T]he nature and extent of a debtor's exemption rights are determined as of the date of the petition.... Thus, any post-petition disposition of the property or post-petition change in the identity of the property into proceeds has no impact upon the exemption analysis."); *In re Kim,* 257 B.R. 680, 685 (9th Cir. BAP 2000) (same); *In re Konnoff,* 341 B.R. 28, 29 (Bankr. D.Ariz.2006) ("homestead proceeds that were exempt as of the petition date remain exempt," even if debtor fails to comply with Arizona requirement that proceeds be reinvested in another homestead within eighteen months); *In re Bedell,* 173 B.R. 463, 466 (Bankr.W.D.N.Y.1994) (debtor was entitled to homestead exemption proceeds, even though payment of homestead exemption from proceeds of voluntary sales is not provided for under New York law, because of "debtor's proper claim of a homestead exemption under Section 522").

Furthermore, that conclusion is consistent with the Bankruptcy Code's "fresh start policy." As the court noted in *Reed:*

> Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy.

*Reed,* 184 B.R. at 738. Similarly, the Eighth Circuit has stated:

> If events subsequent to the date of filing are allowed to alter a debtor's exemptions, uncertainty and subsequent litigation could impede a debtor's fresh start. Moreover, allowing postpetition facts to alter a debtor's homestead exemption

might cause confusion in real estate titles and make it more difficult to finally resolve bankruptcy cases. Consideration of post-petition facts would thus hinder the quick, expeditious resolution of bankruptcy disputes.

*In re Peterson,* 897 F.2d at 938.

### 2. *Plaintiff's Proposed Alternative*

Pasquina proposes an alternative reading of *Reed.* He contends that the case merely provides that proceeds from the sale of exempt property do not return to the bankruptcy estate. More precisely, his position is that these proceeds—although remaining outside the estate—remain liable for post-petition debts and those pre-petition debts found to be "nondischargeable." In support of that argument, Pasquina relies primarily on the following footnote from *Reed:*

> It is important to note here that the court is *not* holding that the proceeds of the disposition of exempt property are therefore also "exempt." When a debtor claims exemptions under state law, only state law controls whether a given property is "exempt." Our holding is only that, under bankruptcy law, if a given property owned by the debtor as of the filing is deemed to be exempt, the property is removed from the estate. It is no longer property of the estate. The conversion of that property into some other form which, under applicable law, would not be exempt will not restore the property to the estate, but that is not the same as saying the property as transmogrified is still exempt.

*Reed,* 184 B.R. at 738 n. 7 (emphasis in original).

The Court finds Pasquina's proposed reading unpersuasive.

### a. Alternate Meanings of the Term "Exempt"

As a preliminary matter, it is necessary to distinguish between two possible meanings of the term "exempt." First, property can be "exempt" under state law—that is, the property can satisfy the requirements of a state exemption statute. The Massachusetts Homestead Act, described above, is an example of this type of exemption. MASS. GEN. LAWS ch. 188, § 1. A debtor who meets that statute's elements can qualify for its protections. *Id.*

Alternatively, property can be "exempt" under 11 U.S.C. § 522. This property is "withdrawn from the [bankruptcy] estate (and hence from the creditors) for the benefit of the debtor." *Owen,* 500 U.S. at 308, 111 S.Ct. 1833. As previously discussed, property found "exempt" under § 522 falls under the protection of § 522(c) and is thereafter protected from pre-petition debts. *See* 11 U.S.C. § 522(c).

■ Because a debtor may generally elect a state exemption list under § 522(b), there is some overlap between state law exemptions and property that is removed from the bankruptcy estate under § 522. It is important to note, however, that property can be "exempt" under state law without being "exempt" from the bankruptcy estate, and *vice versa.* As the court stated in *Reed:*

> Unless the debtor takes affirmative steps to claim property as exempt, the property will remain in the estate [even if the debtor would be entitled to an exemption under the state law]. By

the same token, if the debtor claims property as exempt in his schedules, then interested parties must affirmatively object within thirty days of the first meeting of creditors, or the property will be deemed exempt. This result will follow regardless whether the debtor had even a colorable statutory basis for claiming the exemption.

*Reed,* 184 B.R. at 737 (citations omitted).

With this distinction in mind, the Court now turns to the Bankruptcy Court's specific use of the term "exempt" in *Reed.*

### b. Use of the Term "Exempt" in Reed

■ As noted, the *Reed* court's holding stemmed from the principle "that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact." *Id.* at 737. The Court understands the *Reed* court, in describing this principle, to be referring to property's status under § 522. By contrast, footnote 7 refers to state exemption law. Through that footnote, the *Reed* court is clarifying that its holding is limited to bankruptcy law and that it is not holding the proceeds exempt under the state exemption statute.[8] As footnote 7 states, "[w]hen a debtor claims exemptions under state law, only state law controls whether a given property is 'exempt.'" *Id.* at 738 n. 7. Stated more precisely, the reasoning of *Reed* indicates that once property is exempted under § 522 of the Bankruptcy Code, it is forever removed from the bankruptcy estate and permanently immunized from prepetition debts, although it has no effect on

8. The Court's present decision is similarly limited. Pasquina appears to believe (erroneously) that the Bankruptcy Court below held that the Massachusetts Homestead Act exempts proceeds from all voluntary sales of homesteaded property. To avoid similar confusion, the Court emphasizes that it is not interpreting the meaning of the Massachusetts

Homestead Act or its application to homestead proceeds. Rather, the Court merely affirms that where property is properly exempted under § 522(b) of the Bankruptcy Code, the post-petition sale of that property and conversion into proceeds does not remove those proceeds from the protection of § 522(c).

whether the property qualifies as "exempt" under state law.

A number of factors support this conclusion. First, Pasquina's urged reading—that the proceeds are no longer exempt for purposes of § 522(c) and are therefore liable for all non-dischargeable, pre-petition debts—contradicts the holding of *Reed.* As quoted above, the *Reed* court stated that it was joining those courts that had held that "a postpetition change in the character of property properly claimed as exempt will *not* change the status of that property." *Id.* at 737 (emphasis in original). Second, Pasquina's interpretation would frustrate the Bankruptcy Code's "fresh start" policy. Under his approach, any post-petition occurrence would require courts to inquire into whether property had lost its "exempt" status and become liable to prepetition debts. This is precisely the result the Bankruptcy Code seeks to avoid. *See id.* at 738. Finally, Pasquina's reading conflicts with the hypothetical used by the *Reed* court to illustrate its holding. The court stated:

> If the debtor decides, as part of his fresh start, to sell the house, buy a Winnebago, and travel around the country from campground to campground with his wife and his dog, [§ 522(c)] appears to place no impediment in his path.

*Id.* According to Pasquina's approach, state law determines whether the Winnebago in this hypothetical is "exempt." If it is not, his reading suggests that the Winnebago would be liable to post-petition debts and those pre-petition debts held

non-dischargeable. The *Reed* court, however, describes a contrary result:

> True enough, the Winnebago may not be exempt from obligations he incurs after his discharge (depending on state law), but it should not be vulnerable to the satisfaction of *any* of debtor's prepetition obligations.

*Id.* (emphasis added).[9]

■■■ The Court thus finds Pasquina's alternative reading to be without merit. The Court concludes that post-petition conduct—including the voluntary sale of homesteaded property and the consequent conversion into proceeds that may not be exempt under state law—cannot remove previously exempted property from the protections of § 522(c). Accordingly, the decision of the Bankruptcy Court should be affirmed.

## IV. *The Motion for Preliminary Injunction and Request for Certification to the First Circuit and/or the Supreme Judicial Court*

In light of the foregoing, Pasquina's motion for preliminary injunction and request for certification to the First Circuit and/or the Supreme Judicial Court are moot and therefore will be denied.

## V. *Conclusion*

For the reasons set forth above, the order of the Bankruptcy Court dated December 7, 2005, confirming that the proceeds from the sale of Cunningham's homesteaded property cannot be liable for Pasquina's pre-petition debt is AFFIRMED. The motions of plaintiff/appellant William J. Pasquina for a preliminary

---

9. The "fresh start" policy is obviously at some odds with the policy (as expressed in §§ 523(a)(4) and (a)(6)) that debtors who commit fraud or willful injury should not benefit from their wrongdoing. The Bankruptcy Code requires in the present case that the debtor's claim to an exemption should succeed and the victim's claim to satisfaction of the debt should fail. That is not, of course, the only possible rational policy outcome. The Court notes only that the result here is compelled by the Bankruptcy Code, and that it is for Congress to determine which of the competing demands should take precedence.

injunction and for certification of a question of law to the First Circuit and/or the Supreme Judicial Court are DENIED.

**So Ordered.**