ALDRICH, Senior Circuit Judge.
 

 In September 1995 James R. McFarlane, Jr. (“McFarlane”), husband of defendant-appellant Jayne M. Hanley (“Hanley”), filed a Chapter 7 bankruptcy petition for which William H. Howison, plaintiff-appellee, was appointed trustee. The trustee brought proceedings against Hanley, alleging that McFarlane had fraudulently transferred to her his joint tenancy in the couple’s residence in Scarborough, Maine. McFarlane had conveyed his interest to Hanley for no consideration in April 1993 as part of a refinancing, with the admitted purpose of putting it beyond the reach of his creditors. He was legally insolvent at the time.
 

 On defendant’s motion, the reference was withdrawn from the bankruptcy court and transferred to the district court, which ruled that McFarlane had fraudulently transferred an “asset,” viz., the excess value of his interest over the total of valid encumbrances and his homestead exemption. Ruling that the exemption could not be claimed because of fraud, the court valued McFarlane’s interest at $16,055, and entered judgment against Hanley in that amount. Hanley contests the finding that there was a fraudulent transfer, and, failing that, contests its measure. We affirm.
 

 The parties do not dispute the residence’s fair market appraisal at the conveyance of $168,000. Nor do they quarrel with the court’s subtracting $2,983, for a needed septic system, and $1,907.50, for removal of underground tanks. This left an undisputed fair market value of $163,109.50. They also agree that $140,535.21 in liens encumbered the residence. Without more, this would have left $22,574.29 in equity. To facilitate the closing, however, McFarlane and Hanley paid down a portion of the encumbrances with $9,535.71 in cash, beyond closing costs. The district court added this figure to the $22,574.29 to arrive at $32,110 in equity. MeFarlane’s joint tenancy, transferred to Hanley, was worth half, hence $16,055.
 

 The trustee sought to recover this amount from Hanley pursuant to § 544(b) of the Bankruptcy Code, which provides, “The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim_” Here, the “applicable law” is Maine’s version of the Uniform Fraudulent Transfer Act (the “Act”), 14 M.R.S.A §§ 3571-3582, as well as its law as to exemptions. Under the circumstances, the district court found, McFarlane’s transfer was both constructively and actually fraudulent.
 
 See
 
 §§ 3576(1) & 3575(1)(A). Accordingly, his creditors,.and, therefore, the trustee, could avoid the transfer, or obtain other equitable relief.
 
 See
 
 § 3578(1)(A) & (C).
 

 Hanley’s first contention is that there was no “transfer,” as defined under the Act, and therefore no fraudulent conveyance. “Transfer” means any parting with an “asset,” while “asset” means “property” of the debtor except to the extent that it is encumbered or exempt.
 
 See
 
 § 3572(2) & (12). “Property” means “anything that may be the subject of ownership.”
 
 See
 
 § 3572(10). Her claim is that whatever property McFarlane conveyed did not amount to an “asset” because its value was less than the encumbrances and exemption combined. The merit of this turns, first, on whether the court was correct to “add back” the $9,535.71 brought to the closing. If the $9,535.71 is not added to equity, she contends, McFarlane’s interest would be half of $22,574.29, or $11,287.15. Because this is less than his $12,500 homestead exemption,
 
 infra,
 
 the interest, supposedly, would not be an “asset” and no “transfer” would have occurred. Hanley admits that the $9,535.71 was “utilized to pay off, in part, existing encumbrances on the Resi
 
 *386
 
 dence,” but argues that the conveyance occurred before the pay down, and therefore the encumbrances at the time of the former totaled $140,535.21 rather than $130,999.50.
 

 We are unpersuaded; the conveyance and the refinancing occurred on the same day and essentially as part of a single transaction. Indeed, the parties stipulated before trial that the conveyance and refinancing occurred “simultaneously.” Further, it is a matter of elementary economics that paying down encumbrances on property has the contemporaneous effect of increasing equity in that property. It was not clearly erroneous for the district court to find as much. McFarlane’s equity thus exceeded the $12,-500 homestead exemption.
 

 Hanley next complains that even if this was a fraudulent conveyance, the court incorrectly calculated its extent by refusing to credit McFarlane with the exemption. She.argues that McFarlane could not have fraudulently transferred something that his creditors could not have reached, so the extent of any fraudulent transfer was only $3,555 ($16,055 minus the $12,500 exemption). She relies on
 
 Legro v. Lord,
 
 10 Me. 161, 165 (1833), for the proposition that “No creditor can be, in legal contemplation, defrauded by a mere conveyance made by his debtor of any of his property, which such creditor has no right by law to appropriate or even to touch by any civil process.”
 

 Since that decision, however, there has been an opportunity for statutory changes. 14 M.R.S.A. § 4422 provides:
 

 Exempt property.
 

 The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.
 

 1.
 
 Residence.
 

 A. Except as provided in paragraph B, the debtor’s aggregate interest, not to exceed $12,500 in value.
 

 C. That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period.
 

 Under this a debtor with homestead property worth $12,500 has three choices. He may do nothing, in which event his creditors can take nothing. Second, he may transfer the property for full value, in which event the $12,500 received in return will have a homestead exemption attached, but that will clear in six months — for the benefit of creditors— if it is not reinvested in a residence. If, third, he conveys for no value in return, for the transferee to say there was no loss to his creditors is absurd.
 

 What this means is that the exemption, personal to the debtor, did not follow the asset, and defendant must account.
 

 Affirmed.