# United States Court of Appeals
## For the First Circuit

No. 06-2786

IN RE: MAURICE F. CUNNINGHAM, DEBTOR,

WILLIAM J. PASQUINA,

Appellant,

v.

MAURICE F. CUNNINGHAM,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Barbadoro,[*] District Judge.

John G. Neylon with whom Neylon & O'Brien, P.C. was on brief
for appellant.
George J. Nader with whom Riley & Dever, P.C. was on brief
for appellee.

January 22, 2008

---

[*] Of the District of New Hampshire, sitting by designation.

**LIPEZ**, <u>**Circuit Judge**</u>.  This bankruptcy case requires us to decide whether the post-petition sale of the debtor's home, for which he had obtained a homestead exemption under the law of Massachusetts protecting it from creditors, causes the proceeds of the sale to lose their exempt status under the Bankruptcy Code and become subject to pre-petition, nondischargeable debt.  We conclude that the proceeds from the sale of the home retain the exempt status of the home itself.  We therefore affirm the district court's ruling that the proceeds from the sale of Maurice F. Cunningham's homesteaded property cannot be liable for his pre-petition debt to William J. Pasquina.

## I.

Pasquina hired Cunningham, a former high school classmate, to work in his legal practice in 1982.  In 1995, Pasquina was injured in a car accident and was unable to continue to practice law.  Therefore, Pasquina wanted to sell his legal practice to Cunningham, but they were unable to come to an agreement.  Pasquina then entered unsuccessful negotiations with Pierce & Associates ("Pierce") for the sale of his practice.  During the course of Pasquina's negotiations with Pierce, Cunningham misled both Pasquina and Pierce into believing that he would join Pierce.  Instead, Cunningham secretly removed clients' files from Pasquina's records, covertly opened his own practice, and continued to represent Pasquina's former clients without paying Pasquina his

-2-

share of the earned legal fees or reimbursing him for the expenses he had advanced the clients. In response to Pasquina's lawsuit, the Massachusetts Superior Court entered its initial judgement of $191,072.30 on June 20, 2001, having found that Cunningham breached his fiduciary duties to Pasquina during the period after the accident.[1]

In November 2001, by filing a Declaration of Homestead with the Commonwealth of Massachusetts Registry of Deeds, Cunningham designated his residence at 795 Johnson Street in North Andover, Massachusetts as his homestead. Once property is properly claimed as a homestead pursuant to the Massachusetts Homestead Act, it is shielded from most of an owner's creditors:

> An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except [in certain listed exceptions].

Mass. Gen. Laws ch. 188, § 1.[2] Soon after Cunningham's declaration of homestead, Pasquina attempted to collect upon his superior court

---

[1] The court adjusted its judgement on April 1, 2003 to account for the revenue that Cunningham had subsequently received from cases that originated with Pasquina. The final judgment was $291,554.55 with the accumulation of interest.

[2] In 2004, the homestead protection increased from $300,000 to $500,000. See 2004 Mass. Legis. Serv. ch. 218. Since Cunningham filed for bankruptcy prior to the increase, his homestead exemption is limited to $300,000.

judgment on December 12, 2002 by obtaining a $250,000 writ of attachment against the Johnson Street property.

On February 28, 2003, Cunningham filed for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et. seq., and claimed in the bankruptcy proceedings a $300,000 homestead exemption on the Johnson Street property pursuant to 11 U.S.C. § 522(b). He also disclosed Pasquina's lien on the residence.[3]

Under 11 U.S.C. § 522(f) a debtor can avoid the fixing of a judicial lien on property that is exempted from the bankruptcy estate.[4] Therefore, before the bankruptcy court, Cunningham moved pursuant to § 522(f) for an order avoiding Pasquina's $250,000 writ of attachment.[5] On February 4, 2004, Pasquina filed an objection to Cunningham's motion to avoid the writ of attachment and

---

[3] As our chronology indicates, Pasquina obtained the superior court judgment against Cunningham prior to Cunningham's filing of the declaration of homestead. The Massachusetts Homestead Act contains an exception for "a debt contracted prior to the acquisition of said estate of homestead." However, we ruled in In re Weinstein that the Massachusetts prior debt exception is pre-empted by the Bankruptcy Code. 164 F.3d 677, 682 (1st Cir. 1999). Understandably, Pasquina does not invoke the Massachusetts prior contracted debt exception in his arguments here.

[4] While a debtor can typically avoid the fixing of a judicial lien on his interest in exempt property, he cannot avoid the fixing of a judicial lien for domestic support obligations. 11 U.S.C. § 522(f)(1)(A).

[5] Cunningham stated in this motion that the Johnson Street property was appraised at $495,000 and was subject to $260,000 in outstanding mortgages. Therefore, absent the lien, his equity interest in the property would be less than $235,000, all of which would be eligible for the homestead exemption.

Cunningham's claim of a homestead exemption. The bankruptcy court denied Pasquina's objections both on the merits and because the objections were time-barred,[6] thereby allowing Cunningham to avoid the lien on the Johnson Street property.

Subsequently, Pasquina filed a timely motion in the bankruptcy court requesting that the court determine that Cunningham's debt to him was nondischargeable. In July 2005, the court found that the debt should not be discharged because Cunningham acted fraudulently while in a fiduciary capacity, see 11 U.S.C. § 523(a)(4), and because Cunningham caused willful and malicious financial injury to Pasquina, see 11 U.S.C. § 523(a)(6).[7] On September 20, 2005, the bankruptcy court closed its adversary proceedings.

Meanwhile, Pasquina learned that Cunningham had listed his Johnson Street property for sale. On August 18, 2005, Pasquina filed a motion in the Massachusetts Superior Court arguing that the homestead exemption for the Johnson Street property would terminate upon the sale of the property. Moreover, he claimed that the

---

[6] For these reasons, the bankruptcy court deemed Pasquina's objections to be frivolous and sanctioned him for filing them. Pasquina did not appeal this decision.

[7] Section 523(a) provides that certain types of debts are not subject to the Bankruptcy Code's discharge provisions. More specifically, a debtor who files for Chapter 7 bankruptcy is not discharged from debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," 11 U.S.C. § 523(a)(4), or by "willful and malicious injury by the debtor to another entity or to the property of another entity," 11 U.S.C. § 523(a)(6).

proceeds that would belong to Cunningham's wife, which Pasquina alleged would constitute at least half of the total proceeds, would not be protected by the homestead exemption. In response to this motion, the superior court enjoined Cunningham and his wife from distributing or using any of the sale proceeds if they were to sell the Johnson Street property. Then, Pasquina filed an emergency motion with the superior court arguing that if the Johnson Street property was sold, the proceeds from the sale of the Johnson Street property should be available to satisfy Pasquina's debt because the homestead exemption would be terminated.

On November 3, 2005, Cunningham filed in bankruptcy court "A Motion for Order Confirming Sale Proceeds . . . as Exempt," asking the bankruptcy court to rule that the proceeds from the post-petition sale of the Johnson Street property were exempt from nondischarged debt just as the homestead had been exempt. On November 21, Cunningham and his wife sold the Johnson Street property and moved to a condominium in Florida.[8] Net proceeds from the sale of the homestead property were about $150,000.

On December 7, 2005, the bankruptcy court ruled on Cunningham's motion, deciding that under 11 U.S.C. § 522(c) the sale proceeds from the homestead were exempt from liability for Pasquina's debt. That provision states:

_____

[8] Title to the Florida residence was held only in the name of Cunningham's wife. The record indicates that the residence was purchased before Cunningham filed the bankruptcy petition.

> [P]roperty exempted under this section is not liable
> during or after the case for any debt of the debtor that
> arose . . . before the commencement of the case, except
> [for certain debts, such as tax and child support
> obligations].

The bankruptcy court also found that it could not adjudicate the rights of Cunningham's wife because it had no jurisdiction over her.

Pasquina appealed to the district court. In a thorough and well-reasoned opinion, the court found that the conversion of the homestead property into proceeds by means of voluntary sale does not remove the protections of § 522(c) from the property. In re Cunningham, 354 B.R. 547, 557 (D. Mass. 2006). On appeal to us, Pasquina claims that the district court incorrectly applied federal bankruptcy law to protect funds that should have been available to satisfy a nondischargeable debt. He argues that Massachusetts state law governs the disposition of the proceeds from the voluntary sale of a homestead and that these proceeds became subject to pre-petition debts for which the debtor remains liable. As the relevant facts are undisputed and the issue before us turns entirely on the interpretation of law, our review is plenary. See United States v. Hyde, 497 F.3d 103, 106 (1st Cir. 2007).

## II.

The bankruptcy estate, created upon the filing of a Chapter 7 petition, is comprised of a debtor's legal and equitable interests in property at the time of the petition. Owen v. Owen, 500 U.S.

305, 308 (1991). Typically, assets in the estate are distributed to creditors pursuant to a statutory scheme that assigns priorities to various types of debt. However, particular assets, including a homestead, may be exempted from the bankruptcy estate and retained by the debtor in accordance with the federal Bankruptcy Code. "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." Id. Under § 522(b), a debtor can choose to use either the federal list of exemptions set forth in § 522(d) or the exemptions provided by his state.[9] See 11 U.S.C. § 522(b), (d); Owen, 500 U.S. at 308. Cunningham opted to use Massachusetts's exemption list.

Pasquina objected to Cunningham's claim of a homestead exemption and his motion to avoid Pasquina's judicial lien, 11 U.S.C. § 522(c).[10] The bankruptcy court properly rejected

---

[9] A state is also allowed to "opt-out" of the federal exemption list, in which case the debtor is restricted to the exemptions provided by his state. See Owen, 500 U.S. at 308; 11 U.S.C. § 522(b)(1) (stating that a debtor could select from either list "unless the State law that is applicable to the debtor . . . specifically does not so authorize"). Massachusetts has not "opted-out," thereby allowing its residents to elect the federal exemption list.

[10] While § 522(c) allows states to define their own exemptions under § 522(b), the Bankruptcy Code is not required to take those exemptions with all of the built-in limitations provided by the state exemption. See Owen, 500 U.S. at 313-314 ("[W]e conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision."). In Weinstein, taking our cue from Owen, we emphasized that "the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code." 164 F.3d at 683. We

Pasquina's claims, thereby permanently immunizing the homestead from pre-bankruptcy debt by withdrawing the property from the bankruptcy estate. Property that is properly exempted under § 522 is immunized against liability for prebankruptcy debts, subject only to a few exceptions. Those exceptions include: (1) debt from certain taxes and customs duties, (2) debt related to domestic support obligations, (3) liens that cannot be avoided or voided, including tax liens, and (4) debts for a breach of fiduciary duty to a federal depository institution. See 11 U.S.C. § 522(c)(1)-(3); In re Weinstein, 164 F.3d 677, 682 (1st Cir. 1999).

Pasquina's claim that the post-petition voluntary sale of the exempt property makes the proceeds of the sale available to satisfy a nondischargeable pre-petition debt is at odds with the immunizing effect of § 522(c). Section 522(c) states: "[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . ." 11 U.S.C. § 522(c)(emphasis added). By the plain language of the statute, exemptions under § 522(c) persist beyond the termination of the case, making the property subject to an exemption unavailable for the satisfaction of pre-petition debt (other than for the categories of debt noted in § 522(c) itself). There is only one other proviso to this rule: exempted property is

---

decided in Weinstein that, "because the Massachusetts prior contracted debt exception is not one of the types of debt specified in § 522(c), it is invalid in bankruptcy." Id. at 682.

not liable during or after the case "[u]nless the case is dismissed." Id. Cunningham's bankruptcy case was not dismissed; it was adjudicated.

Moreover, it is a basic principle of bankruptcy law that exemptions are determined when a petition is filed. In re Friedman, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984) ("It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition."); see also Cunningham, 354 B.R. at 553. To interpret § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle and its relationship to the fresh start policy of the Bankruptcy Code.

The Supreme Court has stated that "a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" Grogan v. Garner, 498 U.S. 279, 286 (1991)(quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). The Bankruptcy Code facilitates a fresh start, in part, by allowing property properly exempted under § 522 to be immunized against liability for pre-petition debts. See Owen, 500 U.S. at 309.

The efficacy of the fresh start policy requires finality that allows a debtor to rebuild his life without fear of lingering

-10-

creditors.  In <u>In re Reed</u>, a Texas debtor sold his homestead, which he had taken as an exemption pursuant to the state exemption list, during the pendency of the bankruptcy proceedings.  184 B.R. 733 (Bankr. W.D. Tex. 1995).  The trustee for the bankruptcy estate argued that the post-petition sale of the exempt homestead property made the proceeds available to satisfy pre-petition debt.  The bankruptcy court disagreed.  <u>Id.</u> at 738-39. If "estates could be reopened to administer such proceeds at virtually any time, [the reopening would be] robbing bankruptcy administration of any sort of meaningful finality, and robbing bankruptcy discharge of its efficacy."  <u>Id.</u> at 738.

Pasquina argues that the fresh start and finality interests are inapplicable in this case because Cunningham is a dishonest debtor unworthy of the Bankruptcy Code's protection.  It is simply unfair, Pasquina argues, to limit his ability to collect on his judgement against Cunningham.  Congress has not been unresponsive to such concerns.  When Congress chose to impose limits on the fresh start policy, it did so by providing explicitly that certain debts are nondischargeable.  <u>See</u> 11 U.S.C. § 523(a); <u>Grogan</u>, 498 U.S. at 287 (finding that by allowing certain debts to be nondischargeable, such as "child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud[,] Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed

-11-

the debtors' interest in a complete fresh start").  In fact, Pasquina successfully argued to the bankruptcy court that Cunningham's debt arising from the Massachusetts Superior Court judgement in favor of Pasquina was nondischargeable because of Cunningham's fraudulent conduct.  However, in deciding which pre-petition debts could be satisfied from otherwise exempt property, Congress did not list such a nondischargeable debt in the itemization set forth in § 522(c)(1)-(3).  Therefore, in asking us to limit the protections afforded Cunningham because he is a dishonest debtor, Pasquina is effectively asking us to rewrite § 522(c).  We cannot do that.[11]

## III.

For the foregoing reasons, we affirm the district court's judgement that the post-petition sale of Cunningham's home, for which he had obtained a homestead exemption under the law of

---

[11] We do not break new ground with our decision here, which is consistent with the decisions of the few courts that have considered whether proceeds from the post-petition sale of exempt property are exempt from pre-petition nondischargeable debts.  In Reed, as noted, the bankrupt debtor opted for the state exemption list and made a post-petition sale of the exempted homestead.  184 B.R. at 735.  The Texas bankruptcy court found that "[n]othing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property."  Id. at 738. Similarly, a bankruptcy appellate panel in the Ninth Circuit decided that Arizona's requirement that a debtor must reinvest the proceeds from his homestead within eighteen months of selling the homestead or lose the homestead exemption was not controlling because federal bankruptcy law does not allow post-petition uses of exempt property to change the previously established exemption status.  In re Herman, 120 B.R. 127, 130 (B.A.P. 9th Cir. 1990).

Massachusetts, did not cause the proceeds of the sale to lose their exempt status under the Bankruptcy Code and become subject to Pasquina's pre-petition nondischargeable debt.[12]

    So ordered.

---

[12] Pasquina also asserts that he is a creditor of Cunningham's wife for reasons that are distinct from his claims against Cunningham, and that he should be able to collect the wife's share of the proceeds from the sale of the Johnson Street property because her share is not subject to the homestead exemption. When this claim was raised before the bankruptcy court, the court stated that it did not have jurisdiction over Cunningham's wife because she was not a party to the case. Pasquina does not address this jurisdictional point; hence we have no basis for reviewing his contention that he should be able to collect from Cunningham's wife.