# United States Court of Appeals
## For the First Circuit

No. 19-2074

IN RE JEFFREY J. ROCKWELL,

Debtor.

JEFFREY J. ROCKWELL,

Appellee,

v.

NATHANIEL RICHARD HULL,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

Nathaniel R. Hull and Verrill Dana LLP on brief for the appellant.
Christopher J. Keach and Molleur Law Office on brief for the appellee.

July 30, 2020

**THOMPSON**, **Circuit Judge**.  Jeffrey J. Rockwell filed for Chapter 13 bankruptcy and exempted his home from the bankruptcy estate under Maine's homestead law.  Later, while the bankruptcy was still proceeding, Rockwell sold that home, and, despite Maine's law, did not reinvest the proceeds of the sale in another homestead within six months.  When he converted his bankruptcy to a Chapter 7 proceeding, Chapter 7 Trustee Nathaniel Richard Hull objected to Rockwell's homestead exemption.  The bankruptcy court denied Hull's objection and the district court affirmed.  Hull then appealed to us.  Holding that the Bankruptcy Code dictates that Rockwell's homestead exemption maintains the status it held on the day Rockwell filed his bankruptcy petition, we affirm.

BACKGROUND

In 2001, Rockwell purchased property on B Street in South Portland, Maine.  He still owned that property and was living there on August 19, 2015, when he filed for Chapter 13 bankruptcy.  As he was entitled to under Maine law, 14 M.R.S. § 4422(1), Rockwell claimed a homestead exemption for $47,500 of equity for the B Street property.[1]  As part of his Chapter 13 reorganization plan,

---

[1] A "homestead" is "[t]he house, outbuildings, and adjoining land owned and occupied by a person or family as a residence." Homestead, Black's Law Dictionary (11th ed. 2019).  A "homestead exemption" is a tool a debtor can use to protect his homestead (or, depending on the state, a portion of the proceeds from the sale of it) from creditors.  See Homestead Law, Black's Law Dictionary (11th ed. 2019).

Rockwell proposed to pay the owner of the B street mortgage (i.e., one of his creditors) directly from his other assets and retain ownership and possession of the property. The bankruptcy court confirmed Rockwell's Chapter 13 plan in November 2015.

By December 2016, Rockwell's plans to retain the B Street Property had changed. Specifically, he sought the bankruptcy court's permission to sell the property for $160,000. Rockwell proposed that he would retain the $47,500 allowed by Maine's homestead exemption and contribute the remaining, non-exempt proceeds to his Chapter 13 reorganization plan. At the hearing on Rockwell's motion to sell the property, the Chapter 13 trustee expressed concern about Rockwell's proposed sale price, but nonetheless expected the court to grant the motion.

The bankruptcy court granted Rockwell's motion and ordered him to use the money from the sale to pay the closing costs and the mortgage. Rockwell was to pay any remaining, non-exempt funds from the sale to the Chapter 13 trustee to pay down Rockwell's debt.

On March 6, 2017, Rockwell finalized the sale of the B Street property. After paying the closing costs and the lender, $51,682.87 was left. He kept $47,500 (his homestead exemption as allowed by Maine law) and paid the remaining $4,182.87 to the Chapter 13 trustee. The Chapter 13 trustee did not object.

After the sale, Rockwell still lived at the B Street property, but he planned to move into a home on Bancroft Court, in Portland. Though Rockwell did not own the Bancroft Court property, in the months after the sale and prior to his move, he contributed to its upkeep. Specifically, Rockwell spent $18,806.23 of his homestead exemption on paint, tile, fuel oil, carpet, plumbing, tree-cutting services, and other miscellaneous repairs and supplies, all for the Bancroft Court property, and on moving expenses to move his own belongings from the B Street property to the Bancroft Court property. Then, on August 7, 2017, Rockwell converted his Chapter 13 case to a Chapter 7 case. Rockwell moved into the Bancroft Court property in September 2017 and continued to spend the money from his homestead exemption on repairs and improvements to the Bancroft Court property.

A few months later, the Chapter 7 trustee, Hull, objected to Rockwell's use of the homestead exemption. Hull argued that Rockwell was no longer using the exemption to protect his interest in a homestead because he had not reinvested the proceeds of the sale as required by Maine law. Therefore, from Hull's perspective, the previously protected money -- specifically, the $28,693.77 that Rockwell had not yet spent when he converted his case to a

- 4 -

Chapter 7 case -- should become part of the bankruptcy estate and be used to pay off Rockwell's creditors.[2]

From Rockwell's point of view, he could take a homestead exemption of up to $47,500 when he first filed for bankruptcy in 2015 because he owned his residence at the time. Rockwell argued that the Bankruptcy Code and First Circuit precedent require that the bankruptcy court apply the "complete snapshot" rule, meaning the court evaluates Rockwell's affairs on the day he files for bankruptcy without considering any developments after that date (as if someone took a snapshot of the situation, leaving it frozen in time) to determine if assets are properly exempted from the bankruptcy estate.

The bankruptcy judge held a bench trial to resolve Hull's objection. The judge denied Hull's objection, explaining that "the complete snapshot view [of Rockwell's finances on the day he filed for bankruptcy] more faithfully adhere[d] to the Code, First Circuit authority, and the practicalities of administering a chapter 7 case."

On September 4, 2018, Hull appealed to the United States District Court for the District of Maine, which affirmed the

_____

[2] Pursuant to 11 U.S.C. § 348(f), the trustee could only seek the $28,693.77 remaining at the time of conversion because there were no allegations of bad faith in the conversion.

bankruptcy court's decision. Hull filed a timely appeal to this court on October 22, 2019.

For the reasons that follow, we now affirm.

**OUR TAKE**

Before turning to the merits of Hull's appeal, we will give the reader some context on the Bankruptcy Code and law relevant to the instant litigation. When we review a district court's decision affirming a bankruptcy court's decision, as we do here, we review the bankruptcy court's decision directly. In re Sheedy, 801 F.3d 12, 18 (1st Cir. 2015). We review the bankruptcy judge's legal conclusions *de novo* and factual conclusions for clear error. In re Goguen, 691 F.3d 62, 68 (1st Cir 2012).

**A. The Bankruptcy Code Framework**

When a debtor files for bankruptcy, his interests in property are either compiled into the bankruptcy "estate" from which (to the extent the estate can afford) his creditors will be paid, or those interests are exempted from the estate for the debtor to keep. See 11 U.S.C. § 541. When the estate is created, a combination of federal and state law determines which of the debtor's assets are exempted (and will remain safe from creditor collection) and which belong to the estate (and will be lost to the debtor). See id. § 522(b); Owen v. Owen, 500 U.S. 305, 306 (1991). "[F]ederal law provides no authority for bankruptcy courts

to deny an exemption on a ground not specified in the Code." Law v. Siegel, 571 U.S. 415, 425 (2014) (emphasis omitted).

Pursuant to 11 U.S.C. § 522(b)(3)(A), a debtor can exempt from the bankruptcy estate any property permitted by his state of residence. Among those exemptions is an exemption commonly called a "homestead exemption" which protects, to varying extents, a debtor's interest in their home. See Homestead Law, Black's Law Dictionary (11th ed. 2019). Maine, Rockwell's state of residence, permits debtors to protect their "aggregate interest, not to exceed $47,500 in value, in real or personal property that the debtor . . . uses as a residence." 14 M.R.S. § 4422(1)(A).

Exemptions are determined at the time the debtor files for bankruptcy. White v. Stump, 266 U.S. 310, 313 (1924); Myers v. Matley, 318 U.S. 622, 628 (1943) ("[T]he bankrupt's right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy . . . ."); In re Cunningham, 513 F.3d 318, 318 (1st Cir. 2008). This maxim is called the "snapshot" rule because the debtor's financial situation is frozen in time, as if someone had taken a snapshot of it.[3] In re Awayda, 574 B.R. 692,

---

[3] Though we have rarely used the term "snapshot" in this circuit, see In re Rudler, 576 F.3d 37, 50 (1st Cir. 2009), we have regularly recognized the concept. See, e.g., In re Cunningham, 513 F.3d 318, 324 (1st Cir. 2008) ("[I]t is a basic

697 (Bankr. C.D. Ill. 2017) (noting the "snapshot rule [] controls the moment in time upon which a debtor's right to claim exemptions is based"). When the snapshot rule applies to an asset and the snapshot is "complete," the asset will retain whatever status (i.e., exempt or part of the estate) it had when the debtor filed for bankruptcy and cannot be altered by circumstances that change later. See In re Williams, 515 B.R. 395, 401 (Bankr. D. Mass. 2014) (explaining that the snapsnot rule "focus[es] on the facts and law as they exist on the petition date"); see also In re Cunningham, 513 F.3d at 318. Other times, the snapshot is "incomplete," meaning that the right circumstances could later alter the status of that asset relative to the bankruptcy estate, much like one can edit a snapshot after it has been taken. See, e.g., 11 U.S.C. § 541(a)(5) (requiring that up to 180 days after filing of the bankruptcy petition, property that the debtor acquires by bequest, devise, inheritance, divorce, life insurance, or death benefit becomes part of the estate).

### B.  Chapter 13 and Chapter 7 Bankruptcy

Chapter 13 bankruptcy, the type of bankruptcy Rockwell entered when he first filed in August of 2015, is an entirely voluntary process. Harris v. Viegelahn, 135 S. Ct. 1829, 1835

principle of bankruptcy law that exemptions are determined when a petition is filed.").

(2015). During a Chapter 13 bankruptcy, a debtor contributes some of the income he earns after filing to the estate. 11 U.S.C. § 1306. A Chapter 13 debtor retains control of his property and works out a plan with the court to use the money from the estate to pay back his debt over three to five years. Id. § 1322.

If a debtor proceeds under Chapter 7, the chapter to which Rockwell converted his bankruptcy in 2017, all of his assets, other than the ones exempted from the estate per § 522, become a part of the estate. Id. § 541. The Chapter 7 trustee then sells or otherwise disposes of the debtor's property and pays off creditors from the estate. Id. §§ 704, 726. "Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing." Harris, 135 S. Ct. at 1835 (emphasis in original).

A debtor may convert his bankruptcy from a Chapter 13 to a Chapter 7 proceeding at any time. 11 U.S.C. § 348. "Absent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed." Harris, 135 S. Ct. at 1837.

### C. Analysis of the Present Case

#### 1. The Code Controls this Analysis

Having erected the applicable legal framework, we now turn to the issue before us. No one disputes that on the day Rockwell filed for bankruptcy, he properly protected $47,500 of

- 9 -

his property from the bankruptcy estate by claiming Maine's homestead exemption, 14 M.R.S. § 4422(1). No one disputes that Rockwell sold the property and pocketed the $47,500 without spending it on a new Maine homestead within six months of the sale, which Maine law requires.[4] The sole dispute is whether that $47,500 (or what Rockwell didn't spend of it) lost its protection when Rockwell failed to reinvest in a homestead within the six-month limitation and should be available to pay creditors.

At the outset, we recognize that the Supreme Court instructs that the rules of the Bankruptcy Code have the first and final say, even where equity might demand a different result. In Law v. Siegel, the Supreme Court held that the bankruptcy court had improperly awarded the value of the debtor's homestead exemption to pay for the Chapter 7 trustee's administrative expenses, even though the trustee generated those expenses solely when responding to the debtor's deliberate fraud. 571 U.S. at 422. The Court explained that the Bankruptcy Code permits debtors

---

[4] As detailed above, Rockwell continued to live at the B Street property until September 2017, when he moved into the Bancroft Court residence. No one disputes that he has no ownership interest in this property or that Rockwell spent his B Street proceeds on repairs and other care for the Bancroft Court property. Rockwell argued to the bankruptcy court that this qualifies as investing in a homestead under Maine law, so that money is still exempt from the estate. The bankruptcy court did not resolve this argument because it determined that the B Street proceeds were exempt, regardless of how Rockwell later spent them. For the same reason, we do not address that argument here.

to claim a homestead exemption and for the value of that exemption to be protected from paying, among other things, the administrative expenses of the estate. Id. The debtor in that case properly claimed the homestead exemption and no one filed a timely objection. Id. at 423. Despite the debtor's post-petition conduct, which included submitting fraudulent documents to the bankruptcy court in an effort to wrest a share of the estate back to himself, and despite the fact that this fraud directly caused the trustee to incur approximately half a million dollars in legal fees, the Code did not permit the bankruptcy court to make the debtor's homestead exemption available to defray those legal fees. Id. at 418-22, 427-28 (explaining that the bankruptcy court "may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code"). The bankruptcy court's mandate, therefore, is to "reach . . . an end result required by the Code." Id. at 426.

2. *Exemptions are Analyzed on the date the Debtor Files for Bankruptcy*

With this framing in mind, we recognize that the Code (which we know is supreme here) instructs that the estate does not begin anew when a debtor converts a Chapter 13 bankruptcy proceeding into a Chapter 7 proceeding. 11 U.S.C. § 348(a) (conversion from Chapter 13 to Chapter 7 "does not effect a change

- 11 -

in the date of the filing of the petition, the commencement of the case, or the order for relief").  "[N]othing in the Code den[ies] debtors funds that would have been theirs had the case proceeded under Chapter 7 from the start."  Harris, 135 S. Ct. at 1838.  So, without a doubt, we examine Rockwell's claim of a homestead exemption on the date he filed for his Chapter 13 bankruptcy.  As previously noted, no one disputes that Rockwell properly claimed Maine's homestead exemption on that date.

### 3.    The Complete Snapshot Rule Applies

Therefore, the final concept we must wrestle with is whether to apply the partial or complete snapshot rule:  that is, we consider whether to examine Rockwell's claimed homestead exemption as unchanging, in accordance with the complete snapshot rule, or apply the partial snapshot rule and afford Rockwell the homestead exemption only so far as he maintains his homestead. Again, the Code answers this question for us.  "Property that is properly exempted under § 522 is immunized against liability for prebankruptcy debts, subject only to a few exceptions."  In re Cunningham, 513 F.3d at 323; accord 11 U.S.C. § 522(c)(1)-(3). The Code enumerates those exceptions, where property that is properly exempt on the day of filing (here, the day the snapshot is taken) can be later incorporated into the estate (because the snapshot was only partial and can therefore be edited).  See 11 U.S.C. § 522(c).  "Those exceptions include: (1) debt from certain

- 12 -

taxes and customs duties, (2) debt related to domestic support obligations, (3) liens that cannot be avoided or voided, including tax liens, and (4) debts for a breach of fiduciary duty to a federal depository institution." In re Cunningham, 513 F.3d at 323. Therefore, we must conclude that the complete snapshot rule applies to homestead exemptions taken pursuant to § 522, where none of the statute's enumerated exceptions applies. None of these explicit exceptions applies to Rockwell's case, nor does Hull contend that one does, so Rockwell's homestead exemption taken on the day he filed for bankruptcy must be viewed as unchanging, even in the face of his later sale of the property.

This result lines up with the Code's priority of providing a "fresh start" for debtors. "[W]hile a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." Harris, 135 S. Ct. at 1835. Debtors can best make a fresh start where they can make healthy financial choices moving forward, knowing what property is out of the reach of the pre-petition creditors. Indeed, "exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a fresh start." Schwab v. Reilly, 560 U.S. 770, 791 (2010) (internal quotation marks and citations omitted); accord In re Cunningham, 513 F.3d at 324 ("The efficacy of the fresh start policy requires finality that allows a debtor to rebuild his life

without fear of lingering creditors."). "[A] central purpose of the [Bankruptcy Code] is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" Grogan v. Garner, 498 U.S. 279, 286 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). By protecting Rockwell's exempt property, which was properly exempted on the day of filing, from later being made available to creditors, the bankruptcy court in this case supported Rockwell in achieving the "fresh start" that the Code prizes.

We addressed this aspect of the Code before in In re Cunningham, involving a Chapter 7 filing, where we considered "whether the post-petition sale of the debtor's home, for which he had obtained a homestead exemption under the law of Massachusetts protecting it from creditors, cause[d] the proceeds of the sale to lose their exempt status under the Bankruptcy Code and become subject to pre-petition, nondischargeable debt." In re Cunningham, 513 F.3d at 320. Cunningham, the debtor in that case, had properly claimed a homestead exemption under Massachusetts law. Later, he sold his home, made approximately $150,000 from

- 14 -

the sale, and moved to Florida.[5]  Id. at 322.  One of Cunningham's creditors moved to have the proceeds from the sale used to satisfy Cunningham's debt.  Id. at 321-22.  The creditor argued, similar to Hull's argument here, that the once-exempt interest in the homestead was proper at the time Cunningham filed for bankruptcy, but once he sold the property, it no longer enjoyed the protection of Massachusetts' homestead exemption and therefore could be collected to satisfy Cunningham's debts.  Id. at 322.  When analyzing that case, we noted that § 522(c) has an "immunizing effect" on any exempt assets, other than those explicitly excepted, and those exempt assets are therefore exempt from pre-petition debt collection during and after the bankruptcy.  Id. at 323-24. Though we did not address the rule by name, our approach in In re Cunningham was compatible with the complete snapshot rule, when we held that because the exemption was proper on the day Cunningham filed for bankruptcy, Cunningham's interest in that asset was "permanently immuniz[ed]" from pre-petition debt collection, even if he later sold that homestead.  Id. at 322-325.  Our analysis does not differ here.

---

[5] The Massachusetts homestead exemption in place at the time did not exempt proceeds recovered from a sale of the homestead. See In re Cunningham, 513 F.3d at 321.

*4.    Hull's Concerns*

Trying to distinguish our <u>Cunningham</u> holding, Hull urges us to view this as a distinct Chapter 13 issue because Rockwell sold his home while proceeding in that type of bankruptcy. He tells us that "[t]he differences between a [C]hapter 7 case and a [C]hapter 13 case bear on the outcome of this appeal." According to Hull, our analysis of the homestead exemption should include changes based on post-petition activity because after Rockwell filed his petition, "he retained, exclusive of the [C]hapter 13 trustee, possession of the house and the attendant decision-making authority over what to do with it and the proceeds arising from its sale."[6] Essentially, the complete snapshot rule does not apply to a Chapter 13 proceeding because under Chapter 13, the debtor maintains control of his property.

The Code continues to inform our approach and we find this argument unavailing. The Code considers the transition from

_____

[6] Though not dispositive, we disagree with Hull's characterization of Rockwell's control. While it is true that a hallmark of Chapter 13 proceedings is that the debtor retains possession of his property, <u>see</u> 11 U.S.C. §§ 1322, 1327, the bankruptcy court still exercises control over the debtor. Once the court confirms the debtor's plan, the debtor is bound by the plan's provisions, <u>id.</u> § 1327(a), and the debtor must obtain the court's approval for any modification of the confirmed plan. <u>Id.</u> § 1329. In order to discharge his debt (a debtor's goal in bankruptcy), absent approval by the court under special circumstances, the debtor must "complet[e] . . . all payments under the [Chapter 13] plan." <u>Id.</u> § 1328(a).

a Chapter 13 to a Chapter 7 case and specifies how to examine these cases: we look to the date the petition was filed when evaluating exemptions. 11 U.S.C. § 348(f). The bankruptcy court looks at the debtor's assets on the *conversion* date (as Hull urges us to do here), rather than the *petition* date only when the debtor converts in bad faith. Id. § 348(f)(2); see Harris, 135 S. Ct. 1837-38. Hull does not allege Rockwell converted to a Chapter 7 bankruptcy in bad faith and the bankruptcy court made no such finding. The Code does not contain any other provisions (and Hull does not cite any) that instruct the bankruptcy court to treat a Chapter 7 debtor differently if he converted his case from Chapter 13. See Law, 571 U.S. at 425 ("[f]ederal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." (emphasis omitted)). Rather, the Code values the right of Chapter 13 debtors to convert to Chapter 7 proceedings and specifies that the conversion right cannot be waived. 11 U.S.C. § 1307(a).

We are unpersuaded by Hull's implication that we should ignore the connection between Chapter 13 and Chapter 7 proceedings. "Many debtors . . . fail to complete a Chapter 13 plan successfully." Harris, 135 S. Ct. at 1835 (citing Katherine Porter, The Pretend Solution: An Empirical Study of Bankruptcy Outcomes, 90 Tex. L. Rev. 103, 107–111 (2011) for the proposition that only one third of Chapter 13 cases results in the debtor

successfully discharging debt).  The simple fact of this case is that Rockwell did convert his case to a Chapter 7 bankruptcy, as many Chapter 13 debtors ultimately do.[7]  See id.  As a result, we must view this as what it is:  a Chapter 7 case.

Hull further argues that our holding will effectively read the six-month limitation out of the Maine statute in bankruptcy proceedings.  Where, as here, the debtor exempts their homestead under Maine law and then later sells the homestead, Maine's six-month period for protecting the value of that homestead would not apply.  From our perspective, that is what the Code requires.  "To interpret § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle and its relationship to the fresh start policy of the Bankruptcy Code."  In re Cunningham, 513 F.3d at 324; see Myers, 318 U.S. at 628 ("[A debtor's] right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy and cannot thereafter be enlarged or altered by anything the [debtor] may do.").  As one bankruptcy court aptly put it:  "[a] debtor is not required to maintain exempt property in its exempt state indefinitely after filing in order to avoid a

_____

[7] We do not decide whether sale proceeds continue to be exempted under the Maine homestead exemption if the six-month period expires after the petition date in a Chapter 13 case where there is no conversion to Chapter 7.

retroactive loss of the exemption."  In re Hageman, 388 B.R. 896, 900 (Bankr. C. D. Ill. 2008).

Finally, Hull reminds us that other circuits that have addressed similar questions have reached a result that is (or seems) at odds with the result we reach here.  Hull points us to the Ninth Circuit's approach in In re Jacobson where a Chapter 7 debtor claimed a homestead exemption under California law, a creditor forced the sale of the homestead during the bankruptcy, and the debtor did not reinvest the proceeds of the sale during the six-month period, as required by California's homestead statute.  In re Jacobson, 676 F.3d 1193, 1197 (9th Cir. 2012).  The Ninth Circuit held that the sale's proceeds belonged to the estate, once the six-month reinvestment period had passed.  Id.  The Ninth Circuit purported to apply the snapshot rule, explaining that the snapshot rule, in its view, incorporates "the entire state law[,] includ[ing] a reinvestment requirement for the debtor's share of the homestead sale proceeds."  Id. at 1199.  Hull also relies upon the Fifth Circuit's approach in In re Frost, where a Chapter 13 debtor exempted his homestead pursuant to Texas's vanishing homestead law and then did not reinvest the proceeds within the required time limit.  In re Frost, 744 F.3d 384, 385 (5th Cir. 2014).  The Fifth Circuit held that the debtor lost the protection of the homestead exemption, declining to apply the complete snapshot rule.  Id. at 388 ("[O]nce a new homestead has

- 19 -

been purchased, the funds become proceeds from the sale of a *former* homestead, which fall outside the protection of the Texas statute." (emphasis in original)).

We find these cases unpersuasive. Neither of these cases addresses the Code's valued "fresh start" principles as articulated in Harris, 135 S. Ct. 1829, or the Supreme Court's admonishments in Law, 571 U.S. 415, that courts reach the result required by the text of the Bankruptcy Code. The Ninth Circuit issued its opinion in In re Jacobson in 2012, approximately two years before having the benefit of the Supreme Court's guidance in Law and three years before Harris. See In re Jacobson, 676 F.3d at 1193. The Fifth Circuit issued its opinion in In re Frost one day after the Supreme Court's decision in Law, but does not mention that case, and approximately one year before the Supreme Court's decision in Harris. See In re Frost, 744 F.3d at 384. We are, of course, bound by Supreme Court precedent, not that of our sister circuits, and reach our decision here in accordance with the Supreme Court's guidance.

The outcome is also not altered by our own decision in Howison v. Hanley, 141 F.3d 384 (1st Cir. 1998). In that case, more than two years before filing for bankruptcy, the debtor conveyed his interest in his homestead to his wife for no consideration "with the admitted purpose of putting it beyond the reach of his creditors." Howison, 141 F.3d at 385. The district

- 20 -

court found that this was a fraudulent transfer and we affirmed. Id. When analyzing that case, we summarized Maine's homestead exemption statute, 14 M.R.S. § 4422, (the same statute at issue here), and commented that if the debtor sells his homestead, he retains the value of the homestead exemption, but only if he reinvests in a new homestead in six months, as prescribed by the statute. Id. at 386.

Howison is not on point. It does observe that under Maine law proceeds received in the sale of an exempt homestead lose the protection of the exemption, and thus become available to creditors, if not reinvested in a residence within six months. Id. We agree. Howison said nothing at all, though, about the issue before us: what to do if the debtor files for bankruptcy protection while the asset (whether home or proceeds of selling the home) is still exempt under Maine law? Howison had no need to say anything about that issue because the debtor in that case had conveyed his interest in his residence well more than six months before he petitioned for bankruptcy. See id. at 385. If there had been any proceeds from that conveyance, the six-month homestead exemption protection would have expired long before the debtor's bankruptcy filing. So, it would have made no difference to the debtor in Howison whether one takes a "snapshot" at the time of petitioning because, by that time, the proceeds had already become nonexempt and available to creditors. For that reason, this

court's summary of Maine's homestead statute in <u>Howison</u> has no bearing on the outcome of this case.

In some circumstances, perhaps even in this circumstance, the result of this ruling will not prioritize the debt owed to creditors. Yet, "Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors[,]" <u>Schwab</u>, 560 U.S. at 791, and "it is not for courts to alter the balance struck by the statute." <u>Law</u>, 571 U.S. at 427.

## WRAP UP

For the foregoing reasons, the district court's order is **affirmed**. Costs awarded to Rockwell.